Gregory GILCHRIST, Petitioner–Appellant,

v.

John R. O'KEEFE, Superintendent, Respondent–Appellee.

Docket No. 00–2466.

United States Court of Appeals, Second Circuit.

Argued April 18, 2001.

Decided Aug. 2, 2001.

Gail Jacobs, Great Neck, NY, for petitioner-appellant.

David Axinn, Assistant Solicitor General, for Eliot Spitzer, Attorney General of the State of New York, (Michael S. Belohlavek, Deputy Solicitor General and Marion R. Buchbinder, Assistant Solicitor General, on the brief), New York, NY, for respondent-appellee.

Before: LEVAL, SACK and SOTOMAYOR, Circuit Judges.

SOTOMAYOR, Circuit Judge:

Petitioner Gregory Gilchrist appeals from a judgment of the United States District Court for the Southern District of New York (Martin, *J.*) denying his petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner claims that he was unconstitutionally deprived of counsel during his sentencing proceeding when the state trial court refused to appoint a new attorney for him after he had punched his appointed trial counsel in the head, causing that attorney to withdraw from representing him. Although, of course, under no circumstances do we condone a defendant's use of violence against his attorney, had this been a direct appeal from a federal conviction we might well have agreed with petitioner that the constitutional interests protected by the right to counsel prohibit a finding that a defendant forfeits that right based on a single incident, where there were no warnings that a loss of counsel could result from such misbehavior, where there was no evidence that such action was taken to manipulate the court or delay proceedings, and where it was possible that other measures short of outright denial of counsel could have been taken to protect the safety of counsel. Nevertheless, we cannot say, under the deferential standard applied in habeas review, that the state courts here acted in a manner that

was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. *See* 28 U.S.C. § 2254(d)(1). Accordingly, we affirm the judgment of the district court.

## BACKGROUND

On March 5, 1995, petitioner was found guilty after a jury trial in New York Supreme Court, New York County, of robbery in the second degree. Shortly before sentencing, the Legal Aid Society moved to withdraw as petitioner's counsel. Defense counsel Neville Ross informed the trial judge that on April 5, 1995, petitioner had punched him in the ear and ruptured his eardrum during a pre-sentencing meeting in a courthouse holding cell. At a hearing on April 13, 1995, at which petitioner was provided the opportunity to offer an explanation for his assault on his attorney and during which he suggested that he was simply responding to threats made against him by defense counsel, the judge granted the Legal Aid Society's motion to withdraw. In doing so, the trial court commented on the severity of the attack by noting that it had personally observed petitioner's attorney outside the courtroom very shortly after the attack and that he had seemed "disoriented" and that there was "a large red mark visible" near his ear.

The court not only granted the motion to withdraw, but then refused to appoint a new attorney for petitioner, stating:

The defendant's behavior in this case is totally inexcusable, totally without [ ]provocation, totally inexplicable. I should amend that. There is one explanation and it becomes apparent when one considers the facts of the case itself. It seems to me based upon the credible evidence in the case that when things don't go quite well for the defendant, the defendant acts in a violent way. We had

an example of that testified to by the complaining witness. Another person of slight stature who when he saw the defendant stealing matters—stealing materials from his store and protested about that, was met with a solid punch in the nose by the defendant which caused him physical injury.

. . .

We have now not just one example. We have two examples of it. I really don't see—I really don't see any reason to subject any other member of the bar of this state to the assaultive conduct by the defendant. I have a real concern that any other attorney who is representing this defendant will be met or potentially met with the same assaultive behavior that the defendant used against Mr. Ross.

The court concluded:

One has a right to counsel but one can waive and one can forfeit certain rights, sir, and it seems to me in this particular case that's what's happened.

We have not simply a case where a threat has been made against an attorney or where something happened in the defendant's long past that one might make-might make one a little bit nervous. Rather we have assaultive conduct during the course of a criminal case against an attorney by the defendant who that very attorney is representing. That is inexcusable and it leaves me without any reason whatsoever to appoint a new counsel to represent you and I am not going to do it.

The court adjourned sentencing for one week to allow petitioner time to review the presentence report and prepare to proceed without an attorney.

On April 19, 1995, despite having been relieved as counsel, petitioner's former attorney filed a motion on petitioner's behalf

to set aside the verdict or for a new trial, and a pre-sentence memorandum "to assist the Court with the disposition in the case of Gregory Gilchrist."

On April 24, 1995, petitioner appeared without counsel at sentencing. Despite his official withdrawal from representing petitioner, petitioner's attorney entered the courtroom early on in the proceeding and was present for the remainder thereof. The court reiterated its refusal to appoint counsel for petitioner during sentencing, and noted that: "I denied before trial and also during trial your request to relieve [defendant's attorney] because he was doing a good job for you. I saw no reason to give you a fifth lawyer to represent you on the case; and due to your conduct, I ultimately had to relieve him after the trial was concluded when you slugged him."[1]

Petitioner's former attorney spoke at various points "as a friend of the Court or in some similar capacity" and urged the trial judge not to penalize the petitioner for his attack on him. He explained that "I think that Mr. Gilchrist was simply very stressed at the time" and that the hole in his eardrum had "closed itself." He asked the court to sentence defendant to the minimum term of imprisonment of one and one half to four and one half years.

After petitioner continued to complain that he had been denied representation, the court stated:

You have had several attorneys on the case. Mr. Ross represented you and represented you well and then again you had this terrible incident that occurred in the pen area when Mr. Ross was going to talk to you about sentencing. You attacked him. It was a totally unprovoked attack and as you caused him physical injury—although Mr. Ross apparently forgives you; that's entirely his right; that's his own business—but ... given this violence that you showed here and given the violence that you showed in the case itself, I am not going to put another attorney by court order in [a] position of danger.

The court then sentenced petitioner to an indeterminate prison term of four to twelve years, noting that while it could not "overlook the incident involving your attorney," it was imposing its sentence based primarily on the facts of the case and petitioner's prior criminal record. The proceeding concluded with petitioner's former attorney putting on the record his view. that petitioner "should have had a new lawyer appointed and your Honor declined to do that; and for th[at] reason ... I made myself available as a friend of the Court to be here during the sentence." The prosecutor also made a brief statement, declaring that "[the] People join in that application for a counsel to be appointed for sentence." Apparently, the

1. The reference to giving petitioner a "fifth lawyer," and occasional similar statements by the trial court and subsequent courts, refers to the fact that the Legal Aid Society replaced the individual attorney representing petitioner two or three times before Ross. However, we note that there is no evidence in the record, nor any factual findings from the trial court, suggesting that petitioner played any role in prompting these changes. In fact, petitioner asserts without contradiction from the state that all prior changes of attorney were due to personnel changes by the Legal Aid Society.

It is unclear to what extent, if indeed at all, the state courts considered the defendant to have been responsible for the number of attorneys assigned to him or what role, if any, this may have played in refusing to appoint counsel for sentencing. However, because we find that the state courts' decisions were not unreasonable even if based solely on petitioner's attack on his attorney, any possibility of mistaken attribution of responsibility on this point does not ultimately affect our conclusion.

sentencing hearing ended without further comment.

On May 2, 1995, the trial court issued a written opinion in support of its decision not to appoint counsel for petitioner during sentencing, holding that "the right to counsel, though fundamental, is not absolute. It is a qualified right. Just as is true of other rights, the right to counsel may be restricted or lost due to the misconduct of the defendant." While the court's earlier oral statements had suggested that it viewed the violent nature of petitioner's crime of conviction as evidence of a recurring pattern of violence by the defendant, the court's written opinion emphasized that the nature of petitioner's criminal behavior made it clear that Ross's account of petitioner's attack on him as unprovoked was more believable than petitioner's claim that Ross had first threatened him. The court reiterated that it believed that any new appointed attorney would be in danger and that it was that danger, and petitioner's lying about what had occurred, that formed the bases for his decision not to appoint another attorney. The opinion cited several New York state cases in support of its holding, including *Legal Aid Soc'y v. Rothwax*, 69 A.D.2d 801, 415 N.Y.S.2d 432 (1st Dep't 1979), and also cited *Diaz v. United States*, 223 U.S. 442, 458, 32 S.Ct. 250, 56 L.Ed. 500 (1912), for the general proposition that "[n]either in criminal nor in civil cases will the law allow a person to take advantage of his own wrong." [2]

The Appellate Division, First Department, affirmed, finding that petitioner had forfeited his right to representation at sentencing. *People v. Gilchrist*, 239 A.D.2d 306, 307, 658 N.Y.S.2d 269, 269 (1st Dep't 1997). To support its finding of forfeiture, the Appellate Division cited to both state and federal appellate and trial court cases involving violence or threats of violence against attorneys—*Rothwax*, *United States v. McLeod*, 53 F.3d 322 (11th Cir. 1995) and *United States v. Jennings*, 855 F.Supp. 1427 (M.D.Pa.1994), *aff'd*, 61 F.3d 897 (3d Cir.1995) (unpublished disposition).[3] Chief Judge Kaye of the Court of Appeals denied leave to appeal. *People v. Gilchrist*, 91 N.Y.2d 834, 690 N.E.2d 497, 667 N.Y.S.2d 688 (1997).

Petitioner filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 seeking to have his conviction vacated on the ground that his Sixth Amendment right to counsel had been violated. The district court (Martin, *J.*) denied the petition. *Gilchrist v. O'Keefe*, No. 99 Civ. 1269(JSM), 2000 WL 565186 (S.D.N.Y. May 8, 2000). The court pointed out that "[w]hile petitioner attempts to minimize the [assault], he acknowledged that he had an altercation with counsel that resulted in the injury." The court then held, "Like any other right, a criminal defendant's right to counsel may be waived. By as-

---

**2.** The trial court also addressed the comments of defense counsel and the prosecutor at the end of the sentencing proceeding regarding their desire that the court appoint petitioner new counsel. The court observed that Ross had been standing far away from petitioner with a "phalanx of court officers" between him and the defendant when he made this statement and had not asked that the court vacate the order relieving him from representing defendant. The court dismissed the prosecutor's statement as unsupported by any argument.

**3.** It also placed secondary reliance on a case concerning a defendant who failed to cooperate with multiple attorneys. *See People v. McElveen*, 234 A.D.2d 228, 231, 651 N.Y.S.2d 977, 980 (1st Dep't 1996) (holding that "failure to cooperate with so many appointed attorneys during the course of these proceedings constitutes the effective waiver of the right to counsel").

saulting his court-appointed counsel, petitioner clearly made it impossible for that attorney to continue to represent him and the court had no obligation to expose a new attorney to a similar risk." *Id.* at *1. The court cited *McLeod* and *Jennings* in support of its conclusion. The court issued a certificate of appealability on the issue of whether defendant was unconstitutionally denied his right to counsel at sentencing.

On appeal, petitioner now states that he is not seeking to have his conviction vacated, but is only seeking the writ so that he may be resentenced with representation.

## DISCUSSION

### A. *Habeas Standard*

28 U.S.C. § 2254(d) states, in relevant part, as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

28 U.S.C. § 2254(d)(1).

The phrase "clearly established Federal law, as determined by the Supreme Court" means "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor,* 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A decision is "contrary to" clearly established federal law as determined by the Supreme Court if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Id.* at 413, 120 S.Ct. 1495. A decision is an "unreasonable application" of clearly established Supreme Court law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.* Under the latter standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411, 120 S.Ct. 1495. Interpreting *Williams,* we have added that although "[s]ome increment of incorrectness beyond error is required ... the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Francis S. v. Stone,* 221 F.3d 100, 111 (2d Cir.2000) (internal quotation marks omitted).

### B. *Loss of Right to Counsel*

Petitioner claims that the state court rulings depriving him of appointed counsel were contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court in *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), and *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). In *Gideon,* the Supreme Court held that under the Sixth Amendment, as applicable to state court defendants through the Fourteenth Amendment, "counsel must be provided for defendants unable to employ counsel unless the right is competently and intelligently waived." *Id.* at 340, 83 S.Ct.

792. In *Faretta*, the court elaborated on the requirements for allowing a defendant to proceed *pro se:*

> When an accused manages his own defense, he relinquishes ... many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must knowingly and intelligently forgo those relinquished benefits. Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open.

*Id.* at 835, 95 S.Ct. 2525 (internal quotation marks and citations omitted). Petitioner asserts that he is entitled to a grant of habeas because his assault on his attorney did not constitute a knowing and intelligent waiver of the right to counsel.

The state effectively concedes that if the principles set forth in *Gideon* and *Faretta* (and *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1958)) represent the only constitutionally acceptable justification for not appointing petitioner new counsel, then the state court rulings were contrary to, or an unreasonable application of, the holdings of those cases; the state does not suggest that the trial court ensured that petitioner was made "aware of the dangers and disadvantages of self-representation," *Faretta,* 422 U.S. at 835, 95

S.Ct. 2525, or that petitioner knowingly and intelligently waived his right to counsel in the sense of making an intentional choice to do so.

Instead, echoing the Appellate Division's explanation that petitioner *forfeited* rather than *waived* his right to counsel, *see Gilchrist,* 239 A.D.2d at 307, 658 N.Y.S.2d at 269,[4] the state argues that the waiver rule is simply inapplicable to a case involving a defendant who through his or her own misconduct forfeits the right. If the state is correct, the focus of this Court's habeas analysis would be quite different than under petitioner's argument because there is no Supreme Court precedent deciding the specific circumstances, if any, under which a defendant may forfeit the right to appointed counsel. Thus, under the state's argument, the state court rulings could not be "contrary to" clearly established federal law as determined by the Supreme Court because the state courts could neither have applied a rule of law that contradicted clearly established Supreme Court precedent on the question nor arrived at a conclusion opposite that of the Supreme Court in a case with "materially indistinguishable" facts. The only remaining question would be under the "unreasonable application" prong of habeas review, *i.e.,* whether the events that transpired in this case were too trivial a basis for the state court rulings that petitioner forfeited his right to counsel, such that the determination of forfeiture would constitute an unreasonable application of general Supreme Court

---

4. The Appellate Division also held that "[i]n any event, the attorney appeared voluntarily at defendant's sentencing and provided him with meaningful representation." *Gilchrist,* 239 A.D.2d at 307, 658 N.Y.S.2d at 269. While we are highly doubtful that an attorney appearing not in a formal attorney-client relationship with defendant but rather "as a friend of the Court or in some similar capaci-

ty," *see supra,* could ever satisfy the Sixth Amendment right to counsel, *cf. Entsminger v. Iowa,* 386 U.S. 748, 751, 87 S.Ct. 1402, 18 L.Ed.2d 501 (1967) ("[A]ppointed counsel must function in the active role of an advocate, as opposed to that of amicus curiae"), our affirmance on the antecedent question of the defendant's forfeiture precludes the necessity of reaching this question.

precedent such as *Gideon* establishing that the right the counsel is a fundamental one.

■ As this last question is reached only if the Supreme Court's waiver cases do not provide the governing rule here, however, we turn first to the threshold question of whether the Supreme Court has recognized not only that constitutional rights can be waived—which then requires a finding that such waiver is knowing and intelligent—but also that they can be forfeited in a manner that need not satisfy the "knowing and intelligent" requirement. As the Supreme Court's "knowing and intelligent" waiver standard applies to constitutional rights generally, not solely to the right to counsel, *see Johnson*, 304 U.S. at 464, 58 S.Ct. 1019 (stating general rule that "courts indulge every reasonable presumption against waiver of fundamental constitutional rights.... A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege") (internal quotation marks and citations omitted), a finding that the Supreme Court has recognized the possibility of forfeiture of constitutional rights other than the right to counsel would fatally undermine petitioner's claim that Supreme Court precedent "clearly establish[es]" that the right to counsel may only be waived but not forfeited.

■ The Supreme Court has in fact decided at least two cases of significance, both involving the forfeiture of the constitutional right, under the Sixth Amendment's Confrontation Clause, to be present at one's own trial. Taken together, those cases recognize not only that a defendant may forfeit that right under certain circumstances, but also—and of particular relevance here—that no warning need precede the court's deprivation of the right.

In *Illinois v. Allen*, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970), the Court addressed "whether an accused can claim the benefit of [his] constitutional right to remain in the courtroom while at the same time he engages in speech and conduct which is so noisy, disorderly, and disruptive that it is exceedingly difficult or wholly impossible to carry on the trial." *Id.* at 338, 90 S.Ct. 1057. During the jury-selection stage of the proceeding, the defendant, after threatening to turn the judge into a "corpse," was warned, "One more outbreak of that sort and I'll remove you from the courtroom." *Id.* at 340, 90 S.Ct. 1057. After the defendant's conduct did not improve, he was removed during the selection of the jury, was allowed to return after a promise of good behavior, and was then removed again after he continued to disrupt the proceedings. He was allowed to return during the prosecution's case in chief only briefly for purposes of identification, and, after the prosecution rested, was again informed that he could return to the courtroom if he behaved himself. He so promised and was "permitted to be present through the remainder of the trial, principally his defense, which was conducted by his appointed counsel." *Id.* at 340–41, 90 S.Ct. 1057.

In addressing the constitutionality of the defendant's removal from the courtroom, the Court rejected the holding of the Seventh Circuit that the "Sixth Amendment right to be present at his own trial was so 'absolute' that, no matter how unruly or disruptive the defendant's conduct might be, he could never be held to have lost that right so long as he continued to insist upon it," stating that "[w]e cannot agree that the Sixth Amendment ... or any other cases of this Court so handicap a trial judge in conducting a criminal trial." *Id.* at 342, 90 S.Ct. 1057. The Court held:

> Although mindful that courts must indulge every reasonable presumption against the loss of constitutional rights, we explicitly hold today that a defendant

can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom. Once lost, the right to be present can, of course, be reclaimed as soon as the defendant is willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings.

*Id.* at 343, 90 S.Ct. 1057 (internal citation omitted). We note that while *Allen* stated that a defendant could be removed from the courtroom "after he has been warned by the judge," it did not indicate whether such a warning was a requirement in every situation.

In affirming the defendant's removal from the courtroom, the Court in *Allen* also recognized that "trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case." *Id.* Thus, the Court observed that while there were other "constitutionally permissible ways" the trial court could have dealt with the defendant short of outright denial of the right at issue—such as putting the defendant in physical restraints or citing him for contempt—it could not say that it was unconstitutional for the judge to have exercised his discretion to reject those options in favor of removing the defendant from the courtroom. *Id.* at 343–46, 90 S.Ct. 1057.

In *Taylor v. United States,* 414 U.S. 17, 94 S.Ct. 194, 38 L.Ed.2d 174 (1973), the defendant failed to appear for the remainder of his trial after attending its beginning. The district judge nonetheless conducted the trial without him pursuant to Fed.R.Crim.P. 43, which provides that a defendant's voluntary absence should not prevent continuing the trial, and the defendant was found guilty on all counts. The defendant claimed on appeal that

his mere voluntary absence from his trial cannot be construed as an effective waiver, that is, "an intentional relinquishment or abandonment of a known right or privilege," *unless it is demonstrated that he knew or had been expressly warned by the trial court* not only that he had a right to be present but also that the trial would continue in his absence and thereby effectively foreclose his right to testify and to confront personally the witnesses against him.

*Id.* at 19, 94 S.Ct. 194 (emphasis added) (internal citation omitted). The Court was not troubled by the lack of a warning, finding it "incredible" that the defendant would not know of his right to be present throughout his own trial and would not know that the trial would continue in his absence. *Id.* at 20, 94 S.Ct. 194. The Court thus rejected petitioner's constitutional claim, and quoted from the concurrence in *Allen* that " 'there can be no doubt whatever that the governmental prerogative to proceed with a trial may not be defeated by conduct of the accused that prevents the trial from going forward.' " *Id.* (quoting *Allen,* 397 U.S. at 349, 90 S.Ct. 1057).[5]

**5.** In *Diaz v. United States,* 223 U.S. 442, 32 S.Ct. 250, 56 L.Ed. 500 (1912), the one federal case cited by the trial court, the Supreme Court, as in the more recent *Taylor* case, held that the defendant's voluntary absence from certain portions of his trial waived the right to be present. The Court cited approvingly to

*Falk v. United States,* 15 App. D.C. 446 (D.C.Cir.1899), for the proposition that the law should not " 'allow a person to take advantage of his own wrong. And this would be precisely what it would do if it permitted an escape from prison, or an absconding from the jurisdiction while at large on bail, during

■ At a minimum, these cases—in particular, *Taylor*—stand for the proposition that, even absent a warning, a defendant may be found to have forfeited certain trial-related constitutional rights based on certain types of misconduct. Having thus established that Supreme Court precedent recognizes a distinction between waiver and forfeiture of constitutional rights, and that there is no Supreme Court holding either that an indigent defendant may not forfeit (as opposed to waive) his right to counsel through misconduct nor a general Supreme Court holding that a defendant may not forfeit a constitutional right, we conclude that the state court rulings were not "contrary to" clearly established federal law as determined by the Supreme Court.

The remaining question is whether the state courts' holding that petitioner forfeited his right to counsel based on a single, apparently spontaneous violent incident constituted an "unreasonable application" of the more general principles in Supreme Court cases such as *Gideon* emphasizing the tremendous importance of the right to counsel. *See, e.g., Gideon,* 372 U.S. at 344, 83 S.Ct. 792 ("[I]n our adversary system of criminal justice, any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him"); *see also McConnell v. Rhay,* 393 U.S. 2, 3, 89 S.Ct. 32, 21 L.Ed.2d 2 (1968) ("The right to counsel at sentencing ... relates to 'the very integrity of the fact-finding process' ") (quoting *Linkletter v. Walker,* 381 U.S. 618, 639, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965)). This step is necessary because the lack of Supreme Court precedent specifically addressing forfeiture of the right to counsel does not mean that any determination that

such a fundamental right has been forfeited, even if based on an utterly trivial ground, would survive habeas review. *Cf. Jones v. Stinson,* 229 F.3d 112, 119–20 (2d Cir.2000) (while noting that state court decision was not "contrary to" Supreme Court precedent because "[t]he Supreme Court has not decided the specific circumstances under which a criminal defendant must be allowed to introduce evidence of prior non-criminal conduct to demonstrate that he did not commit the crime at issue," court goes on to evaluate whether decision "was objectively unreasonable in light of Supreme Court precedent that the opportunity to present a defense is one of the constitutional requirements of a fair trial"). Here, however, given the Supreme Court's recognition that other important constitutional rights may be forfeited based on serious misconduct, we cannot say that the state courts were unreasonable in determining that the right to counsel could be forfeited based on petitioner's physical assault on his attorney.

Although the above would be sufficient for us to reach this conclusion, we note that our determination that the state courts were not unreasonable in considering petitioner's assault and the events surrounding it to be sufficient justification for forfeiture is additionally supported by the fact that other Circuits have examined similar factors in arriving at similar results. *See generally Cruz v. Miller,* 255 F.3d 77, 85 (2d Cir.2001) ("Although our inquiry ... is to determine whether the state courts reasonably applied clearly established Supreme Court law, we think it appropriate to make some examination of how the federal courts of appeals have analyzed the issue of custody for *Miranda*

the pendency of a trial before a jury, to operate as a shield.' " *Id.* at 458 (quoting *Falk,* 15 App. D.C. at 460). It should be noted, however, that the Court observed in describing the

facts of the case that, notwithstanding the defendant's absence, "[t]he accused was represented and heard by counsel at every stage of the proceedings." *Id.* at 453.

purposes. We make this inquiry, not to determine whether all reasonable jurists could deem the circumstances of [petitioner's] questioning to involve 'custody,' ... but to see the considerations that these courts have considered relevant.") (internal citation omitted); *see also Vick v. Williams*, 233 F.3d 213, 222 (4th Cir.2000) ("[N]othing in *Williams [v. Taylor]* suggests or commands that this court make [the reasonableness] determination in a vacuum. Where ... the otherwise objectively reasonable bases for a state court's interpretation of a given precedent are common to the reasoned decisions of many courts, it would be judicial myopia of the first order to ignore the force of consensus in assessing the objective reasonableness in the particular case.' "). In *United States v. McLeod*, 53 F.3d 322 (11th Cir. 1995), for example, after a jury had found the defendant guilty of retaliating against a witness, the defendant's attorney sought to withdraw, and testified at a withdrawal hearing that defendant had been "verbally abusive and threatened to harm him." *Id.* at 325. The court granted the withdrawal motion and denied the defendant's request for another attorney to represent him at a hearing on the defendant's motion for a new trial. The Eleventh Circuit affirmed, observing that in other contexts, "[c]ourts ... have recognized that a criminal defendant may forfeit constitutional rights by virtue of his or her actions." *Id.* The court cited as support, among other authorities, the Supreme Court's decision in *Allen*. It then held, "By analogy, we conclude that under certain circumstances, a defendant who is abusive toward his attorney may forfeit his right to counsel." *Id.* The court rejected the idea that *Allen* had established a "warning rule" in the context of forfeitures, at least as long as the defendant, as here, was provided an opportunity to be heard before the court decided to rule that the right to counsel had been forfeited. *See id.* at 326 (commenting that while it was "troubled by the fact that [the defendant] was not warned that his misbehavior might lead to *pro se* representation, the court gave [the defendant] the opportunity to testify at the hearing held on [his attorney's] motion to withdraw").[6]

The Third Circuit has held similarly. In *United States v. Leggett*, 162 F.3d 237 (3d Cir.1998), the defendant did not merely threaten but physically attacked his second court-appointed attorney[7] in the courtroom—including punching him in the head—on the day he was to be sentenced. The district court permitted the attorney to withdraw and "concluded that [the defendant] had forfeited his right to counsel for the sentencing hearing." *Id.* at 240. The defendant appeared without counsel at sentencing. On appeal, the Third Circuit held that "[t]o forfeit the right to legal representation, a defendant must engage in 'extremely serious misconduct,' " *id.* at 250 (quoting *United States v. Goldberg*, 67 F.3d 1092, 1102 (3d Cir.1995)), and concluded that petitioner's unprovoked attack "qualifies as the sort of 'extremely serious misconduct' that amounts to the forfeiture of the right to counsel." *Id.* (quoting *Goldberg*, 67 F.3d at 1102); *see also United States v. Jennings*, 855 F.Supp. 1427 (M.D.Pa.1994) (court held that defendant "waived" right to appointment of new

---

**6.** Because petitioner has not raised the argument and, consequently, the parties have neither briefed nor argued it, we do not consider whether the state court's denial of new appointed counsel based on facts found at a hearing at which petitioner was not represented by counsel is contrary to clearly established federal law or an unreasonable application of such law.

**7.** The first attorney withdrew after she claimed that the defendant threatened her with physical harm. *Id.* at 240.

counsel to represent him at trial when, immediately after motion to substitute counsel denied, defendant punched attorney in the head in courtroom prior to jury selection and made threats to kill others in courtroom), *aff'd,* 61 F.3d 897 (3d Cir.1995) (unpublished opinion).[8]

The Third Circuit in *Leggett* emphasized that the stage of the proceeding at which the assault occurred—as here, just prior to sentencing—also weighed in favor of the finding of forfeiture:

> We note that the forfeiture of counsel at sentencing does not deal as serious a blow to a defendant as would the forfeiture of counsel at the trial itself.... We underscore that the district court in this case made its forfeiture ruling at the sentencing stage, not during the trial itself. We express no opinion as to whether Leggett's misconduct would

have been sufficient to justify the forfeiture of counsel during the trial.

*Id.* at 251 n. 14. We similarly emphasize here that the state courts were not faced with the additional concerns and potentially heightened burden of justification that might be associated with a denial of counsel at trial.

Finally, we observe that to the extent the state court rulings here might be characterized as extending the forfeiture principles in *Allen, Taylor* and *Diaz* to the right to counsel, rather than simply applying a standard created independently of those cases, *see generally Williams,* 529 U.S. at 408–09, 120 S.Ct. 1495 (noting that "unreasonable application" prong of habeas review might cover cases challenging decisions "that unreasonably extend a legal principle from our precedent to a new context"),[9] we find for the reasons already

---

**8.** We note that the state attempts to draw a parallel between this case and a scenario of the type at issue in *Jennings,* in which an attack or threats against an attorney immediately follow the denial of a motion to substitute counsel. The state suggests that defendant's assault on his attorney may have been part of a similar attempt to manipulate the judicial process, because petitioner had unsuccessfully moved prior to the beginning of the trial to have Ross removed as his attorney. Petitioner also made one comment complaining about his attorney after the trial began, but then stated that he preferred continuing with him as his counsel.

Scenarios such as the one in *Jennings* that are suggestive of an attempt to manipulate the court would seem to present a stronger case for a finding of forfeiture. We do not, however, evaluate the reasonableness of the state courts' decisions as if they were in response to manipulative behavior because neither the trial court nor the Appellate Division made any findings that petitioner had engaged in such behavior, and because, in any event, there is a lack of significant evidence suggesting that petitioner's attack was motivated by a desire to effect a change of counsel.

**9.** In addition to the trial court's cite to *Diaz,* it also relied in part on a New York state case

purporting to apply *Allen's* forfeiture rule. *See Legal Aid Society v. Rothwax,* 69 A.D.2d 801, 415 N.Y.S.2d 432 (1st Dep't 1979). In *Rothwax,* the Legal Aid Society sought a writ of mandamus requiring the trial judge to allow it to withdraw from representation of the defendant. The defendant had threatened his attorney and any Legal Aid substitutes with bodily harm if they continued to represent him and, in a previous case, had "already assaulted Legal Aid counsel." *Id.* at 801, 415 N.Y.S.2d at 433. The court granted the application allowing Legal Aid to withdraw, noting that the court had a "duty to protect its officers." *Id.* The court emphasized, however, that in allowing the withdrawal of Legal Aid, it was not ruling at that time that the defendant was not entitled to any attorney at all because defendant "has the right to be represented by counsel despite his misbehavior." *Id.* The court nevertheless cautioned that "the right to counsel in a criminal case is not unlimited. *Gideon v. Wainwright* ... and its progeny do not hold that a defendant must have counsel in all circumstances. A defendant may by his conduct waive the constitutional right to counsel just as a defendant may forfeit his constitutional right to be present in the courtroom (*see Illinois v. Allen,* 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353)." *Id.,*

discussed above that such an extension of the forfeiture principle was not unreasonable.

While we affirm the district court's denial of the writ, we do not mean to suggest that any physical assault by a defendant on counsel will automatically justify constitutionally a finding of forfeiture of the right to counsel. First, as noted above, because § 2254 severely restricts our scope of review, we have no occasion to pass on the question of whether the denial of counsel in this case violates the Sixth Amendment *simpliciter*. Our ruling is only that the state courts' decision to deny counsel was not "contrary to, or . . . an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

■■■■■ Second, the right to appointed counsel provided for in *Gideon* and its progeny is not simply a right that benefits defendants personally. The right to counsel is a fundamental part of what makes our judicial system constitutionally fair, providing some measure of assurance against inaccurate determinations and unjust judgments, and this system as a whole suffers when counsel is absent. In response to incidents of this nature, trial courts have the discretion to take intermediate steps short of complete denial of counsel, and we think that courts should exercise that discretion wherever possible and consider whether the protection of counsel can be thoroughly assured by other means-for example, keeping a defendant in restraints when meeting with counsel and during courtroom proceedings. In addition, as was the case here, threats or violence against an attorney may be con-

sidered by the court in imposing its sentence. Moreover, of course, such behavior may in itself constitute a crime for which the defendant may be separately prosecuted. By responding to threats in this manner, a defendant may still be punished for his misconduct while the constitutional interests of the judicial system remain protected to the greatest extent possible.

## CONCLUSION

Because the state court rulings here were not contrary to, nor an unreasonable application of, clearly established federal law as determined by the Supreme Court, we affirm the judgment of the district court.

---

415 N.Y.S.2d at 433–34 (internal citations omitted).

The Appellate Division similarly relied on *Rothwax,* and also relied on the *McLeod* case,

in which the Eleventh Circuit expressly analogized to *Allen's* forfeiture rule, *see McLeod,* 53 F.3d at 325.