**Louis GROTTO, Petitioner,**

v.

**Victor HERBERT, Superintendent, Collins Correctional Facility, Respondent.**

**No. 98–CV–627.**

United States District Court, N.D. New York.

May 1, 2002.

Gurda, Gurda & Smith, Middletown, NY (Alex Smith, of counsel), Robert N. Isseks, Middletown, NY, for petitioner.

Eliot Spitzer, Attorney General of the State of New York (Sean M. Seely, of counsel) for respondent.

### MEMORANDUM–DECISION AND ORDER

HURD, District Judge.

## I. INTRODUCTION

On April 20, 1998, petitioner Louis Grotto ("petitioner" or "Grotto") filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On January 24, 2001, United States Magistrate Judge Gary L. Sharpe filed a Report–Recommendation which recommended dismissal of the petition. Petitioner filed objections to the Report–Recommendation on February 6, 2001, pursuant to 28 U.S.C. § 636(b)(1). The respondent did not reply to the objections. The matter was received without oral argument.

## II. FACTS

The following are the facts necessary to a determination of the instant petition.

On November 5, 1994, Grotto was convicted in Ulster County Court at Kingston, New York, upon a jury verdict of the crimes of Rape in the First Degree, Sexual Abuse in the First Degree, Incest, and two counts of Endangering the Welfare of a Child. On December 14, 1994, he was sentenced to a term of imprisonment of six to 18 years.

The rape and incest charges arose out of an alleged sexual assault by Grotto on his six-year old daughter at the townhouse of Grotto's sister, Linda Noe ("Noe"), on the morning of her wedding. The endangering charges arose out of alleged sexual assaults by Grotto of his daughter and the other 12–year old daughter of his live-in girlfriend, Kimberly O'Brien ("O'Brien").[1] O'Brien and her two daughters were the primary fact witnesses in the prosecution case.

The petitioner's six-year old daughter was the only fact witness against him regarding the alleged sexual assault at the Noe townhouse. She testified specifically that the assault had occurred at the townhouse on the morning of Grotto's sister's wedding. Grotto's defense to the rape and incest charges was an alibi defense. He offered proof that he had not been at Noe's townhouse at all on the day of the

---

**1.** Grotto is not the father of O'Brien's twelve-    year old daughter.

wedding. To discredit Grotto's alibi defense, the prosecution offered certain photographs into evidence that were allegedly taken by Grotto at the Noe townhouse on the morning of Noe's wedding. These photographs were received into evidence by the trial judge, the Honorable Edward A. Sheridan. The defense concluded its proof and rested at approximately 7:00 p.m. on Thursday, November 3, 1994.

At approximately 10:10 a.m. the next morning, Friday, November 4, 1994, defense counsel informed Judge Sheridan that he had received a telephone call from Grotto that morning. Grotto indicated that his family had found additional photographs from the same negative string as the ones containing the pictures which the prosecutor used to discredit his alibi, and that these additional photos proved that the photos used by the prosecutor were, in fact, not taken by Grotto. The defense moved to reopen the case to call Rochelle Grotto ("Rochelle"), the wife of petitioner's brother.

Grotto's attorney informed the court that Rochelle would testify that, based upon a review of the photographs from the negative string mentioned above, that it was her husband, Ralph Grotto ("Ralph"), not petitioner, who had taken the disputed photographs. She was prepared to testify that she knew this because she had made handwritten notations on the back of the photographs taken by her husband, and because his photographs were developed on different paper than the photographs taken by petitioner.[2]

Based upon this new information, Grotto's attorney moved for a continuance until the following Monday, November 7, 1994. Alternatively, the defense requested a continuance until 2:00 p.m. that same afternoon for Rochelle to fly from her home in Rochester to Kingston. As a final option, he requested that the defense be allowed to call Rochelle's niece, Renee Planke ("Planke") to identify the handwriting on the photographs in question as Rochelle's. Judge Sheridan denied petitioner's request for a brief continuance to allow Rochelle to testify, ruling that

> it seems to me that the evidence that the defense has discovered and seeks to introduce now after the defense has rested ... *is hardly conclusive with respect to the defendant's guilt or non-guilt,* and in the Court's view, the People's proof with respect to the sequence of negatives is hardly conclusive for its theory or its version of what the negatives show. Each side is free to argue it. I'll let you argue it as you see fit. But it seems to me *the evidence is hardly conclusive that these photographs were taken by the camera owned by the defendant.* It's hardly conclusive that it places him there. I mean, there's testimony throughout the trial that several people were taking photos. *There is nothing conclusive on either side of the case linking these particular negatives to the defendant's camera.* So you're each free to argue it as you see fit, but I'm not going to reopen for the purpose put on the record by defense counsel or grant a continuance until Monday or until later in the day.

[RA 536–37] (Emphasis added.) Judge Sheridan also declined to reopen the case to allow Planke to testify. The parties

---

**2.** Rochelle was prepared to testify that the photographs taken by Ralph were developed on Kodak paper by FAY's Drug Store in Rochester, New York. According to petitioner, this fact was significant because the photographs taken by him were developed on AGFA paper by M & R Photo in New Paltz, New York, [RA 736], while the photographs used to attack Grotto's alibi defense were printed on Kodak paper. (Throughout this opinion, citations to the state court record on appeal are cited as "[RA ---]".)

then proceeded to make their closing arguments.

The defense closing highlighted Grotto's claim that he was not at the Noe townhouse and that he had not committed the acts alleged. The defense also focused upon the lack of physical evidence, and attacked the credibility of the three primary fact witnesses in this case (O'Brien and her two daughters). The prosecution's closing, among other things, vigorously attacked Grotto's alibi defense through the disputed photographs and by arguing that it was not logical for Grotto to stay away from the Noe townhouse on the morning of his sister's wedding because his family members had gathered there and he was the official photographer for the wedding.

> Specifically, the prosecution argued that when a false alibi is introduced into evidence, [the judge] tells you that that person who introduced that false alibi is conscious of guilt, of his guilt in that instance, and you know why? You know why that alibi is false in those negatives up there. . . . *The pictures do show that he was there*, she was there and the negatives tell you that the sequence of events are exactly the way she said them.

[RA 585–86] (Emphasis added.) Referring to the photographs developed on Kodak paper, the prosecution also argued that

> the fact of their being together on that exhibit tells you that the same person who took this picture was the same one who took all these other pictures at the house. And that person who took this picture is Louis Grotto, and *that person who took these photos is Louis Grotto, and he was in the house, and this makes it very clear.*

[RA 598–600] (Emphasis added.) By attacking the alibi defense through the photographs taken at the Noe townhouse allegedly by Grotto, the prosecutor sought to discredit Grotto and all of his alibi witnesses who testified that he was not at the Noe townhouse on the morning of the wedding.

Following the closing arguments, Judge Sheridan charged the jury. With regard to Grotto's alibi defense, Judge Sheridan instructed the jury that

> [T]he defendant has presented evidence that he was someplace else when the crime[s] alleged in counts one, two and three of the indictment occurred. In our law, this is known as an alibi defense. In order for you to convict the defendant, the People must disprove the alibi defense beyond a reasonable doubt. If the evidence as to alibi in and of itself or when taken into consideration with all the other evidence in the case creates a reasonable doubt as to the guilt of the defendant on these counts, then you must find the defendant not guilty.

[RA 610–11]

Following the charge, the jury retired to deliberate. After approximately five hours of deliberations, the jury sent out the following note:

> We, the jury, request, is it possible to have someone check to see where M & R Photo is located, as paper used in Exhibit K? We are interested to find out *if it is developed in the Rochester area.*

[RA 657] The jury was returned to the courtroom and instructed by Judge Sheridan that, "There's no evidence or testimony with respect to the location of M & R Photo, and we are unable . . . to provide you that at this time." [RA 658]

Based on the jury note, defense counsel moved for a mistrial, commenting that

> [i]t appears . . . that the jury is doing a better, more reasonable job than the advocates, and are asking questions that maybe the advocates in their rush to try

this case did not think to ask or did not have time to ask, and I am fearful that there will be a miscarriage of justice here.

[RA 659]

Judge Sheridan denied the motion for a mistrial because, in his view,

> The jurors' questions about the origin of certain of the prints . . . did not require or indicate in any way that a mistrial is marked and at this time, the issue of who took the photos, what camera was used I think was adequately developed by both sides on examination and cross-examination of witnesses and was argued both sides [sic] to the jury, and I don't see any basis arising from these questions now posed by the jurors with respect to the photos that would indicate a mistrial should be granted.

[RA 662] Shortly thereafter, the jury sent out another note requesting "information on photos and testimony as per Louis Grotto". [RA 663] The jury was again returned to the courtroom to have the testimony of Louis Grotto read back to it. The jury retired again to continue its deliberations.

After being excused for the evening at approximately 11:15 p.m., the jury returned at 9:30 the following morning. After requesting to hear the testimony of Grotto's daughter again, the jury returned a guilty verdict on all counts at approximately 2:50 p.m. After the court had excused the jury, petitioner moved to set aside the verdict on the basis of the jury's apparent confusion regarding the photographs. The court reserved decision.

At Grotto's sentencing, Judge Sheridan gave both the prosecutor and Grotto's newly-retained counsel an opportunity to argue further on the motion to set aside the verdict. In addition to the ground asserted by Grotto's trial counsel, Grotto's new attorney argued that trial counsel had

been ineffective. Following the arguments of counsel, Judge Sheridan issued his ruling. The following is his ruling on the motion:

> With respect to the motion to set aside the verdict, the Court renders the following decision: The defendant was convicted by a jury of rape in the first degree and related offenses. He has moved pursuant to Criminal Procedure Law Section 330.30 to set aside the verdict based on (1), the ground that the trial court committed reversible error when it refused the defendant's request to reopen his case upon the discovery of additional evidence; and (2), that the defendant was denied the effective assistance of counsel. While the latter ground might more properly be brought on a motion addressed to the judgment, the Court will address it in the context in which it was made.

> The essential allegation against the defendant was that he had raped his young daughter in his sister's townhouse on the morning of his sister's wedding. According to the victim who gave detailed testimony, the incident took place after the defendant's family had left the townhouse to go to the wedding ceremony. In sharp contrast, the defendant denied having raped his daughter and put forth an alibi defense in which he sought to establish, contrary to the victim's testimony, he and his daughter had never been at the townhouse before the ceremony. Five members of the wedding party testified in support of the alibi. Several people, including the defendant, took photographs of the wedding events on that day. During the defense case the People introduced some nine photographs taken that day in an attempt to disprove the alibi. The defense introduced another 12 photographs in an attempt to support the alibi

testimony. *The witnesses, however, were essentially unable to establish who took which photograph, what camera was used to take any particular photograph, and in what sequence the photographs had been taken. In the Court's view, the testimony was vague, sometimes contradictory, and some of the photographic evidence, in the Court's view, was confusing, inconclusive, and had little, if any, probative value in terms of either proving or disproving the alibi defense.*

The day after the defense had rested its case, defense counsel requested that the case be reopened and that he be granted a continuance and that he be allowed to introduce yet more photographs which had been found by the defendant's family the previous evening and to call additional witnesses. Because in the Court's view any additional photographs could have and should have been discovered and introduced before the parties had rested, and because both sides had had ample opportunity to explore the issue of photographs and to explore the alibi defense, the Court denied the request and proceeded to summations and charge.

On this motion the defense now argues that the denial of the request to reopen the case was an error of such magnitude to have denied the defendant of his fundamental right to present a case and introduce witnesses and exhibits.

The Court was presented with a sharp issue of credibility. The young victim testified in detail as to the rape and the surrounding circumstances. The defendant denied the allegations, testified in detail on his own behalf, and called five alibi witnesses who were questioned extensively on both direct and cross examination concerning events and the 21 photos before the defense rested. On

the following day members of the defendant's family produced additional photographs that had been in their possession since shortly after the incident.

Such evidence, in the Court's view, did not qualify as newly discovered, nor was it of such character that its introduction by the defense would probably have resulted in a more favorable verdict. Since variations in the order and the conduct of trials are committed to the sound discretion of the trial Court, the denial of the defendant's request to reopen under the circumstances of this case would, in the Court's view, not require reversal as a matter of law by an appellate court.

[RA 771–74] (Emphasis added.) The Court then rejected Grotto's claim of ineffective assistance of counsel, and sentenced him to a term of imprisonment of six to 18 years.

Grotto appealed his conviction to the New York State Supreme Court, Appellate Division, Third Department. The Third Department affirmed his conviction. With regard to his Sixth Amendment claims, the Third Department's entire discussion was

We further conclude that County Court acted well within its discretion in denying defendant's motion to reopen the proof after both sides had rested, in order to produce evidence as to photographs that had not only been in defendant's possession at all times but which had for months been the subject of an outstanding prosecution discovery demand (*see, People v. Henderson,* 28 A.D.2d 1145, 1146, 284 N.Y.S.2d 378). Finally, defendant was by no means denied effective assistance of counsel (*see, People v. Baldi,* 54 N.Y.2d 137, 444 N.Y.S.2d 893, 429 N.E.2d 400).

*People v. Grotto,* 223 A.D.2d 758, 759, 636 N.Y.S.2d 436 (3d Dept.1996). Petitioner then moved for leave to appeal to the New

York Court of Appeals. His motion was denied. *Grotto,* 87 N.Y.2d 1020, 644 N.Y.S.2d 153, 666 N.E.2d 1067 (1996).

Thereafter, Grotto filed a subsequent motion in state court seeking to vacate his conviction on the basis of certain newly-discovered evidence. This evidence consisted of telephone records and affidavits from petitioner's business customers and neighbors that purported to place him at his own home, and not the Noe townhouse, on the morning of his sister's wedding. This motion was denied by the trial court on August 13, 1996, and was affirmed by the Third Department on July 24, 1997, *People v. Grotto,* 241 A.D.2d 785, 660 N.Y.S.2d 472 (3d Dept.1997). Leave to appeal to the Court of Appeals was again denied. Grotto, 90 N.Y.2d 940, 664 N.Y.S.2d 758, 687 N.E.2d 655 (1997).

The petitioner then commenced the instant matter. His petition asserts five bases upon which he contends the requested writ should issue, and that the aforementioned state court decisions deprived him of due process rights under the constitutions of the United States and the State of New York.

## III. *STANDARD OF REVIEW*

### A. *Antiterrorism and Effective Death Penalty Act*

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, "once a state court has adjudicated a petitioner's claim on the merits[3], a federal court may not grant a habeas petition on that claim unless that adjudication 'resulted in a decision that was contrary to, or involved an unreason-

able application of, clearly established Federal law, as determined by the Supreme Court of the United States.' " *Sanchez v. Duncan,* 282 F.3d 78, 81 (2d Cir. 2002) (quoting 28 U.S.C. § 2254(d)(1)). In asking whether a particular application of federal law was unreasonable, courts look for "[s]ome increment of incorrectness beyond error." *Jenkins,* —— F.3d at ——, 2002 WL 483547, *6, 2002 U.S.App. LEXIS 5621, *19 (quoting *Francis S. v. Stone,* 221 F.3d 100, 111 (2d Cir.2000)). A state court decision will constitute an "unreasonable application" of Supreme Court precedent where it (1) "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case", *Williams v. Taylor,* 529 U.S. 362, 408–08, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), or (2) where it "unreasonably failed to extend a clearly established, Supreme Court defined, legal principle to situations which that principle should have, in reason, governed." *Kennaugh v. Miller,* 289 F.3d 36, 45 (2d Cir.2002). The "clearly established federal law, as determined by the Supreme Court" may be "either a generalized standard enunciated in the Court's case law or a bright–line rule designed to effectuate such a standard in a particular context." *Kennaugh,* 289 F.3d at 42 (citing *Gilchrist v. O'Keefe,* 260 F.3d 87 (2d Cir.2001)).

## IV. *DISCUSSION*

### A. *The Five Bases For Petitioner's Challenge To His Conviction*

Petitioner contends that his federal constitutional rights were violated in that (1) the trial court precluded him from pre-

---

**3.** Although the Appellate Division did not explicitly reference petitioner's federal constitutional claim or reference federal law in denying his appeal, its decision constituted an adjudication on the merits because petitioner presented his federal constitutional claims before the court and there is nothing in the

history of the case to suggest that the its determination was other than "on the merits." *See Jenkins v. Artuz,* —— F.3d ——, 2002 WL 483547, **5–6, 2002 U.S.App. LEXIS,*16–*17 (2d Cir. April 1, 2002) (quoting *Sellan v. Kuhlman,* 261 F.3d 303, 312–14 (2d Cir.2001)).

senting exculpatory evidence by denying his motion for a brief continuance and by denying his New York State Criminal Procedure Law § 440.10 motion without a hearing; (2) his trial attorney's lack of preparedness denied him the effective assistance of counsel; (3) the trial court improperly admitted evidence concerning prior uncharged rapes; (4) the trial court improperly admitted prejudicial testimony of a school psychologist; and (5) cumulatively, these errors deprived him of a fair trial. Grounds two through five are rejected for the reasons set forth in the Report–Recommendation of Magistrate Judge Sharpe. Ground one is discussed below insofar as it asserts that petitioner's due process rights were violated by the trial court's denial of a brief continuance to obtain the testimony of Rochelle Grotto.

### B. *Refusal To Grant Continuance*

The Supreme Court has clearly established that the right to offer the testimony of witnesses is constitutionally protected. *See Pennsylvania v. Ritchie*, 480 U.S. 39, 56, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987) ("Our cases establish, at a minimum, that criminal defendants have the right to the government's assistance in compelling the attendance of favorable witnesses at trial and the right to put before a jury evidence that might influence the determination of guilt."); *Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). An accused has a fundamental right to present witnesses in his own defense. *Taylor v. Illinois*, 484 U.S. 400, 408, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988). The failure to grant a continuance to enable a criminal defendant to exercise that right can, under some cir-

cumstances, constitute a denial of due process. *See, e.g., Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964) (applying due process standard to denial of continuance based on right to counsel); *Hicks v. Wainwright*, 633 F.2d 1146, 1148–49 (5th Cir.1981); *Bennett v. Scroggy*, 793 F.2d 772, 776–77 (6th Cir. 1986) (Compulsory Process clause violated where trial court arbitrarily refused to grant overnight continuance to allow defendant to secure a favorable witness that constituted defendant's only defense).[4]

While it is true that, as a general rule, a trial court has "broad discretion" in deciding whether to grant or deny a criminal defendant's request for a continuance, *Morris v. Slappy*, 461 U.S. 1, 11, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983), a court must not adhere to a "myopic insistence upon expeditiousness" at the expense of a criminal defendant's constitutional rights. *Ungar*, 376 U.S. at 589, 84 S.Ct. 841. It is a hallmark of the fair trial required by the Constitution that criminal defendants be afforded "a meaningful opportunity to present a complete defense." *California v. Trombetta*, 467 U.S. 479, 485, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). Where a trial court refuses to grant a brief continuance to secure the testimony of a necessary witness and thereby excludes relevant exculpatory evidence, habeas corpus relief is proper because "the right of petitioner to present the witness outweigh[s] any inconvenience that would have been caused by extending the trial by a few hours." *Hicks*, 633 F.2d at 1150.

In this case, it was an unreasonable and arbitrary application of federal law for the

---

**4.** Where appropriate, lower court decisions interpreting and applying relevant Supreme Court precedent are cited and/or discussed because, as the Second Circuit has noted, "the lower federal courts retain their 'independent obligation to say what the law is' under governing Supreme Court precedents." *Kennaugh*, 289 F.3d at 42 (quoting *Williams*, 529 U.S. at 411, 120 S.Ct. 1495).

Appellate Division to deny petitioner's appeal based on the refusal to grant a continuance because, in light of the foregoing Supreme Court precedent, it is clear that the trial court abused its discretion in denying petitioner's motion for a brief continuance. A review of the circumstances surrounding plaintiff's request for a continuance demonstrate both that the trial court's refusal to grant the continuance was unreasonable and that the denial of the continuance substantially impaired petitioner's defense.

### 1. *Reasonableness of the Refusal to Grant Continuance*

■■ In evaluating the reasonableness of a trial court's decision to grant or deny a continuance, the Supreme Court has mandated that a reviewing court "not apply a mechanical test, but [look] at the circumstances surrounding the request for a continuance," *Ungar*, 376 U.S. at 589, 84 S.Ct. 841. In the instant case, a review of the circumstances surrounding petitioner's requested continuance demonstrates that Judge Sheridan abused his discretion and violated petitioner's right to due process. This is so because the requested continuance was for a justifiable purpose (*i.e.,* to obtain essential testimony bearing on the ultimate guilt or innocence of the petitioner) and was of such brevity that no factors other than "a myopic insistence upon expeditiousness" could have justified its denial. *Id.*

Notwithstanding Judge Sheridan's characterization of the evidence in question as "hardly conclusive with respect to the [petitioner's] guilt or non-guilt," the proposed testimony of Rochelle Grotto would have been conclusive on a significant issue. The prosecution in this case endeavored to place petitioner at the Noe townhouse through the proffered photographs. Ro-

chelle would have testified definitively that petitioner did not take the photographs. She would have based her testimony on the fact the photographs contained her handwritten notes and were developed in her husband's hometown, Rochester, New York, and not in the petitioner's home of New Paltz, New York. This meant that her husband, and not petitioner, must have taken the photographs. She would also have definitively testified that Grotto was not at the Noe townhouse. By denying petitioner the opportunity to present this testimony, the jury was left with the erroneous impression that no witness could state with certainty whether or not petitioner had taken the disputed photographs.

This fact is apparent from the trial record in this case, which demonstrates that there was substantial confusion regarding the photographic evidence introduced at petitioner's trial and, more importantly, that the trial judge recognized that there was such confusion. In his post-trial ruling, Judge Sheridan characterized the photographic evidence as "vague, sometimes contradictory, and ... confusing, inconclusive, and had little, if any, probative value in terms of either proving or disproving the alibi defense."

Notwithstanding this admitted confusion, the trial judge denied petitioner the very opportunity to present evidence that, if believed by the jury, would have resolved this confusion. Judge Sheridan then compounded the harm by permitting the prosecution to argue that petitioner's testimony, as well as his alibi witnesses, had been discredited by this very same vague, confusing and inconclusive photographic evidence. The error was further compounded when he did not take any steps to correct this deficiency when confronted with the juror's note clearly indicating it was confused over the source of the photographs.[5] Instead, Judge Sheri-

---

**5.** The jury note stated, "We are interested to

find out if it [the photographs] was developed

dan ultimately determined that this evidence was not "of such character that its introduction by the defense would probably have resulted in a more favorable verdict." This was not a reasonable basis for the exercise of his discretion to deny the petitioner's requested brief continuance.

Moreover, the Appellate Division's brief decision denying petitioner's appeal did not even consider these surrounding circumstances or the effect of Judge Sheridan's ruling upon petitioner's constitutional rights. Instead, the Appellate Division focused upon petitioner's prior possession of the photographs and the fact that he had failed to turn them over in response to the prosecution's discovery demand.[6]

On the circumstances of this case, where the exclusion of the evidence resulted in the evisceration of both petitioner's credibility and his alibi defense by "placing" him at the scene of the crime, the petitioner was unreasonably denied his requested continuance, and thereby deprived of "a meaningful opportunity to present a complete defense." *Trombetta,* 467 U.S. at 485, 104 S.Ct. 2528. As such, it was a denial of his due process rights to deny him the brief continuance requested by his counsel.

### 2. *Substantial Impairment of Defense*

█ It is abundantly clear from the record in this case that the denial of the requested continuance substantially impaired petitioner's defense and did not constitute, as is often the case, harmless

in the Rochester area." [RA 657]

6. It is difficult to see the relevance of this fact, in light of the circumstances of this case. There is no suggestion that petitioner withheld the proposed testimony out of some dilatory tactic, or out of a desire to deceive the prosecution. Instead, it appears as though the Appellate Division concluded that the de-

trial error. By preventing the jury from hearing evidence that went directly to his alibi, and permitting the prosecution to argue and the jury to rely upon "vague," "contradictory," and "confusing" evidence to conclude that petitioner and his witnesses were testifying falsely regarding his presence at the Noe townhouse, Judge Sheridan without good cause denied the petitioner an opportunity to rebut highly damaging prosecution evidence.

In addition, in a case which presented what the trial court characterized as "a sharp issue of credibility" between the petitioner and his alleged victims, petitioner's credibility was effectively destroyed as a result of the exclusion of this evidence. Instead of being presented with evidence that, if accepted, would have been conclusive as to the source of the disputed photographs, the jury was lead to conclude that Grotto had been present at the Noe townhouse, that he had taken the photographs, and that he had testified falsely concerning his non-presence at the scene of the alleged crime. The prosecution was then permitted to argue that the photographs were "proof" that Grotto's alibi was false, and that his false alibi demonstrated that he was "conscious of guilt, of his guilt in that instance." As such, particularly in light of the fact that, incredibly, the jury then made a specific inquiry concerning the exact subject of Rochelle's excluded testimony, it is held that the prejudice to petitioner's defense was substantial and obvious. The denial of a brief continuance in the particular facts of this case was not harmless error.[7]

nial of the continuance was proper as a sanction to petitioner for the lack of diligence by his counsel.

7. In addition, because petitioner's credibility was severely damaged by the exclusion of Rochelle's testimony, he is entitled to a new trial on all issues. Once his credibility was

## V. *CONCLUSION*

For the reasons set forth above, the January 24, 2001, Report–Recommendation of Magistrate Judge Gary L. Sharpe is rejected as to petitioner's first ground for relief, but adopted as to grounds two through five.

Therefore, it is,

ORDERED that

1. Petitioner Louis Grotto's petition for a writ of habeas corpus is GRANTED; and

2. A writ of habeas corpus shall issue unless the State of New York grants petitioner' Louis Grotto a new trial within ninety days of the date of this decision.

The Clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.

damaged on the Noe townhouse issue, it was also necessarily damaged concerning his denial of the endangering charge—which also presented a "sharp issue of credibility" with no physical evidence.