■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILLIAM McELVEEN, Appellant. [651 NYS2d 977] —Judgment, Supreme Court, New York County (James Leff, J.), rendered March 5, 1992, which convicted defendant of unauthorized use of a vehicle in the third degree, and sentenced him to a definite term of imprisonment of one year, and judgment, same court and Justice, rendered March 22, 1994, which convicted defendant, upon his guilty plea, of criminal possession of stolen property in the third degree, and sentenced him to an indeterminate term of imprisonment of from three to six years, and order, same court and Justice, entered November 10, 1993, which dismissed his petition for a writ of habeas corpus, unanimously affirmed.

On March 6, 1991, two police officers, parked on Broadway between 140th and 141st Streets in Manhattan, saw defendant driving toward them at a high rate of speed in a dark blue, 1985 Mercedes sedan. Defendant stopped alongside them, at which time the officers noticed that the rear vent window of the car was shattered and the trunk crushed upwards. The officers pursued defendant as he passed through three red lights,

eventually abandoning the car in front of a bodega, in which the officers arrested him. The Mercedes was found to have been stolen from a hotel parking lot in White Plains, New York. Significant damage had been caused in gaining access to the vehicle, the glove compartment and center armrest, and in removing the stereo and cellular telephone. Upon his seizure by police, defendant was found holding a paper bag in one hand, containing the car's cellular telephone, and a screwdriver in the other.

Defendant was charged with criminal possession of stolen property in the third degree (Penal Law § 165.50) and unauthorized use of a vehicle in the third degree (Penal Law § 165.05 [1]). On February 6, 1992, a jury found defendant guilty of unauthorized use of a vehicle in the third degree, but deadlocked on the count charging criminal possession of stolen property. Supreme Court declared a mistrial and directed a retrial on that charge. On March 5, 1992, defendant was sentenced to one year in jail for unauthorized use of a motor vehicle, at which time the court ordered that defendant be assigned new court-appointed counsel for trial on the remaining count.

What transpired between the imposition of sentence and June 15, 1993 is unclear as defendant has only furnished the transcripts of two brief court appearances. Both make reference to some five or six lawyers having represented defendant at various times during this time period. At the June 15, 1993 appearance, the court was informed (by the attorney who represented defendant at the first trial) that defendant had rejected an offer of a reduced sentence in exchange for his guilty plea, which had been discussed with him "at great length." Supreme Court, voicing its displeasure with the time and resources "squandered" by defendant, relieved his appointed attorney, to which counsel expressed neither objection nor surprise. The court thereupon directed that defendant represent himself at the upcoming trial. Jury selection was conducted on July 12, 1993, but culminated in the declaration of a mistrial on the following day after defendant disrupted the proceedings. On March 1, 1994, defendant (again with the assistance of the attorney who represented him at the first trial) entered a plea of guilty to criminal possession of stolen property in the third degree and waived his right to appeal in exchange for a prison term of three to six years. Sentence was imposed on March 22, 1994 in accordance with the plea agreement.

Although appeal is taken from two judgments, defendant concedes in his brief that no issues are raised with respect to

either the judgment entered March 5, 1992 or the order entered November 10, 1993, denying his application for a writ of habeas corpus. Defendant argues that his conviction must be reversed because reprosecution violated the constitutional prohibition against double jeopardy. He asserts that the court's declaration of a mistrial "was manifestly unnecessary because the court should have opted for the constitutionally required alternative of appointing new counsel to represent appellant."

Given the number of times new counsel was appointed in this case, defendant is in the untenable position of the boy who cried "Wolf!" It is well settled that "[w]here a mistrial is granted without the consent or over the objection of a defendant, retrial is barred by double jeopardy protection unless there was 'manifest necessity' for the mistrial or 'the ends of public justice would otherwise be defeated' " (*People v Ferguson*, 67 NY2d 383, 388, quoting *United States v Perez*, 9 Wheat [22 US] 579, 580; *Matter of Enright v Siedlicki*, 59 NY2d 195, 199; *Matter of Robles v Bamberger*, 219 AD2d 243, 246, *lv denied* 88 NY2d 809). Reprosecution is permissible where a mistrial is mandated because "it is physically impossible to proceed with trial in conformity with law" (CPL 280.10 [3]). To establish manifest necessity, it must appear that the court considered all proper alternatives before declaring the mistrial (*Matter of Enright v Siedlicki, supra,* at 200; *Matter of Robles v Bamberger, supra,* at 247).

In the absence of any explanation for defendant's dismissal of at least six former attorneys—listed by the court as Messrs. Stone, Wachtel, Portnoy, Rosenthal, Traub, and O'Rourke (omitting Muraskin)—the suggestion that the court was required to appoint yet another attorney while jury selection was in progress is presumptuous. "The right of an indigent criminal defendant to the services of a court-appointed lawyer does not encompass a right to appointment of successive lawyers at defendant's option" (*People v Sides*, 75 NY2d 822, 824). In the absence of "exigent or compelling circumstances, a court may, in the exercise of its discretion, deny a defendant's request to substitute counsel made on the eve of or during trial if the defendant has been accorded a reasonable opportunity to retain counsel of his own choosing before that time" (*People v Arroyave*, 49 NY2d 264, 271). Where a request for new counsel is made during the course of jury selection, denial is appropriate unless compelling circumstances are demonstrated (*People v Gloster*, 175 AD2d 258, 259-260, *lv denied* 78 NY2d 1011 [defendant represented by two or three prior attorneys]). Furthermore, in the absence of good cause, the refusal to proceed to

trial with competent appointed counsel constitutes a "voluntary" waiver of the right to be represented by an attorney of one's choosing (*supra,* at 260, citing *Maynard v Meachum,* 545 F2d 273, 278).

Defendant's protestations to the contrary notwithstanding, his failure to cooperate with so many appointed attorneys during the course of these proceedings constitutes the effective waiver of the right to counsel. While the circumstances of the court's dismissal of defendant's attorney on July 13, 1992 are unclear from the brief record, it is significant that neither counsel nor defendant raised any objection. As noted parenthetically, the attorney had represented defendant at his first trial of this crime. Moreover, the transcript of the proceedings during sentencing reveals that defendant was to have a new lawyer "for the retrial of the criminal possession of stolen property" count. To defendant's obvious disdain for counsel in general is added the clear indication of dissatisfaction with this attorney in particular. The obvious inference is that defendant did not want the attorney to represent him at the new trial and acquiesced in his dismissal. The record provided by defendant to this Court contravenes his subsequent contention that Supreme Court unilaterally dismissed counsel in violation of defendant's wishes.

As to the declaration of a mistrial, it seems that the experience of jury selection forced defendant to acknowledge that he was not better equipped than assigned counsel to mount a defense if, in view of the overwhelming evidence against him, there was a defense to be mounted. Having been warned by the court, in no uncertain terms, that conviction would likely result in "heavy time" (15 years to life as opposed to an offer as low as $2^1/2$ to 5 years in exchange for a guilty plea), defendant's threat to continue to disrupt the proceedings until new counsel was appointed is understandable. It was also grounds to declare a mistrial, a step that was very much in defendant's best interests. It hardly behooves defendant to suggest that his concerted efforts to make a mockery of the judicial process should be rewarded because he was successful in waiving—by his conduct—a constitutional right that process is designed to protect (*see, United States v Dinitz,* 424 US 600, 611 [double jeopardy concerns not implicated where mistrial results from defense misconduct]).

Defendant's brief contains extensive references to intemperate remarks made by Supreme Court. While it is desirable that a court at all times maintain its demeanor, it is apparent from the record that this defendant would try the patience of the

most temperate Justice. And while temperance may be desirable, what the law requires is that a defendant be accorded due process. It is understatement to say that defendant is not inexperienced in the procedures of the criminal justice system. (The court recounted some 55 arrests and 24 convictions over a period of 23 years.) By his obstreperous behavior, defendant has attempted to manipulate the system to his advantage. While his conduct elicited some untoward comments from the court, it is remarkable that the court was able to prevent defendant from goading it into compromising his right to be treated with fairness. In fact, during sentencing proceedings, it was the court that induced the prosecutor to agree to reduce the sentence from a proposed 3½ to 7 years in order to meet defendant's offer to plead guilty in exchange for a sentence of 3 to 6 years, which reduced sentence was accordingly imposed by the court.

Defendant's other contentions have been examined and found to be without merit. Concur—Rosenberger, J. P., Rubin, Ross, Tom and Andrias, JJ.