*562 OPINION OF THE COURT
Joseph A. Zayas, J.
Defense counsel, assigned pursuant to County Law article 18-b, moves to be relieved from representing defendant for a Sex Offender Registration Act (SORA) hearing (Correction Law § 168). Defense counsel contends that he is no longer able to represent defendant in these matters because (a) defendant has threatened to file a baseless, contrived complaint against counsel with the Grievance Committee, and (b) communication between defense counsel and defendant has completely and irretrievably broken down, in part because defendant claims that counsel is engaged in a conspiracy with the People to deprive defendant of his rights. Counsel further asserts that counsel refuses to speak to defendant any further without a third-party witness present because defendant has repeatedly mischaracterized, or otherwise twisted, counsel’s statements. Although defendant opposed counsel’s motion to be relieved during oral argument on the motion, in his written reply, defendant asked the court to grant counsel’s motion to be relieved, and further moved for new counsel to be assigned.
The court is constrained to consider counsel’s motion to be relieved and defendant’s motion for assignment of new counsel in the procedural and historical context in which the motions are made — a case history which has been exemplified by defendant’s prior dilatory conduct and prior attempts to sabotage his relationships with his four prior attorneys in these cases, as well as a case history in which the court previously warned defendant that his repeated efforts to sabotage his relationships with his attorneys would result in a forfeiture and an effective waiver of his right to appointed counsel.
Following oral argument on the motion on January 8, 2008, this court orally granted defense counsel’s motion to be relieved and denied defendant’s motion for assignment of new counsel, requiring defendant to proceed pro se. This court specifically found that defendant had engaged in a pattern of conduct designed to not only delay the criminal proceedings but also to sabotage his relationships with the numerous attorneys who had been appointed or retained to represent him, including his relationship with defense counsel here. Significantly, this court had previously found, following a searching inquiry of defendant, that defendant was well aware of the risks of self-representation and had made a knowing, voluntary and intelligent waiver of his right to counsel. Accordingly, the court *563 concluded that defendant had forfeited and waived his right to counsel and was required to proceed pro se.
This written decision sets forth in detail the reasons underlying the court’s oral ruling rendered on January 8, 2008. Background, History of Proceedings and the Various Assignments of Counsel
On July 20, 2006, defendant was arraigned on two separate accusatory instruments, each of which charged defendant with forcible touching (Penal Law § 130.52) and sexual abuse in the third degree (Penal Law § 130.55). The accusatory instruments alleged that defendant lured two women into his home for “job interviews,” by placing advertisements in local newspapers for a “Home Office Assistant.” They further alleged that, during the interview and application process, defendant forcibly touched the sexual or other intimate parts of the women without their consent.
From the time of defendant’s arraignment on July 20, 2006, to the time of the defendant’s SORA hearing and the hearing on the instant motion on January 8, 2008, defendant was represented by five different attorneys and repeatedly moved for assignment of new counsel or permission to proceed pro se. Defendant’s first attorney, assigned at arraignment, was Melody Glover, Esq., an experienced criminal defense attorney associated with Queens Law Associates (QLA). At defendant’s arraignment, defendant immediately moved for assignment of new counsel, asserting that he could not afford to retain counsel. Defendant’s motion was promptly denied for failure to assert good cause, as was his subsequent motion to relieve Ms. Glover when his cases appeared for the first time in an All Purpose Part on July 25, 2006.
On August 2, 2006, defendant retained a private attorney, Harold Ramsey, Esq. Because defendant did not inform Ms. Glover of the new representation, however, Ms. Glover filed a bail reduction writ and an omnibus motion on defendant’s behalf when defendant was duly represented by Mr. Ramsey. In light of the notice of appearance filed by Mr. Ramsey on August 2, the court relieved Ms. Glover (QLA) on August 9, 2006.
On September 28, 2006, defendant filed a pro se motion to dismiss the accusatory instruments and apprised the court in the motion that he had “dismissed Harold Ramsey, Esq.,” as his counsel. On October 10, 2006, however, Mr. Ramsey appeared on defendant’s behalf and defendant moved to relieve counsel and requested that defendant be permitted to proceed pro se. *564 The court granted defendant’s applications following a searching inquiry in which the court advised defendant of the risks of proceeding pro se and the advantages of being represented by counsel, and ascertained that defendant was intelligently and knowingly waiving his right to counsel.
On November 3, 2006, defendant moved for a reduction in bail. When the court denied the motion and indicated that it was going to adjourn the case for a Wade hearing, defendant repeatedly interrupted the court and repeatedly equated the denial of the motion to reduce bail with the court’s “murdering” and “killing” of defendant’s elderly mother. When the court warned defendant to refrain from making “inflammatory comments,” defendant repeatedly asserted that since he was “going to be raped and sodomized in this case,” he no longer wished to proceed pro se and was constrained to request assignment of counsel. The court then adjourned the cases to November 20 for the assignment of counsel and delayed the scheduling of the Wade hearing.
On November 20, 2006, Daria Aumand, Esq. was assigned and appeared on defendant’s behalf. The court again warned defendant that his inflammatory comments and constant interruptions would warrant a finding of contempt if they continued. In the meantime, defendant posted bail on November 9. Defendant’s cases were then adjourned several times for new counsel to become familiar with the cases and for additional motion practice, notwithstanding the fact that various motions had already been filed by defendant and defendant’s prior attorney (Glover).
After several other adjournments, the Wade hearing was scheduled for May 3, and then rescheduled for May 10, 2007. One day prior to the hearing, however, defendant filed a letter with the court requesting (a) that the court adjourn the hearing yet again for three weeks so that he could retain new counsel and (b) that Ms. Aumand be relieved because he was dissatisfied with her services. In the letter, defendant asserted that he did “not authorize[ ] [Ms. Aumand] ... to act any further in [his] behalf.” Defendant reiterated these requests when he appeared in court on May 10, and Ms. Aumand joined in the application to be relieved given the “difficult position” in which she was placed by defendant’s application.
Finding that Ms. Aumand had been “effective and diligent in these matters” and that defendant failed to establish good cause for an adjournment or for relieving Ms. Aumand, the court *565 denied defendant’s requests. The court further found that defendant had engaged in a pattern of “purposefully sabotaging his relationship” with his assigned counsel and otherwise was “engaging in dilatory tactics . . . . to delay th[e] Wade hearing” and “the prosecution in this matter.” The court advised defendant, however, that should he wish to retain counsel at any point, he would be permitted to do so as long as it did not delay the proceedings.
The Wade hearing was then commenced and adjourned to May 15, 2007. On May 15, defendant requested an adjournment of the continued hearing because his mother had passed away. The court granted defendant’s request and adjourned the hearing to June 14, 2007. On June 14, however, defendant again requested an adjournment because he had “an extreme headache” and because he still wished to retain an attorney. When the court denied the request for an adjournment, defendant again requested that the court relieve Ms. Aumand or “reduce” her “status ... to co-counsel” so that he could proceed pro se. Inasmuch as the court had previously determined, after an extended, searching inquiry, that defendant was aware of the risks associated with self-representation, and intelligently and knowingly waived his right to counsel, the court granted defendant’s request and assigned Ms. Aumand as defendant’s legal advisor. The court further advised defendant that during the hearing should he wish for Ms. Aumand to cross-examine the People’s witness or present legal argument, he would be able to ask her to aid in that way.
During the direct testimony of one of the detectives, defendant represented himself and conducted a voir dire related to the admissibility of the photo array. When the detective completed his direct testimony, however, defendant announced that he “will allow Ms. Aumand to represent” him. Ms. Aumand then conducted cross-examination of the detective but then apprised the court that defendant wished to ask a question. The court exercised its discretion to permit defendant to ask the detective various questions. Following the testimony, Ms. Aumand presented legal arguments regarding the suppression issues. Although defendant was invited to make additional arguments, he declined to do so. The court then rendered its decision on the motion to suppress and adjourned the matter to June 25, 2007 to resolve various discovery issues which were outstanding.
On June 25, 2007, however, the court was unable to resolve the outstanding discovery issues because defendant again moved *566 to relieve Ms. Aumand as his attorney or legal adviser and for assignment of new counsel, claiming that she had not sought disclosure of his personal property (which he claimed was exculpatory) recovered by the police during the execution of a search warrant and had not hired an investigator. Ms. Aumand disputed each of defendant’s claims and the court specifically found that Ms. Aumand had provided “appropriate, effective assistance of counsel” throughout her representation of defendant and had repeatedly and diligently sought to obtain the very property which defendant claimed was exculpatory. Indeed, the disclosure of that alleged property was the subject of previous conferences between the litigants[1] and was the very subject which the court expected to resolve on June 25. It was indeed part of the very reason for the adjournment.
Although she disputed defendant’s claims, Ms. Aumand joined in defendant’s motion to relieve her because defendant “threatened to file a state and federal lawsuit” against her — a lawsuit against which she would have to personally defend. Defendant candidly admitted that he had already filed such a lawsuit.
Because defendant had filed a lawsuit against his assigned attorney, the court granted the motion to relieve Ms. Aumand and assign a new attorney. The court again found, however, that defendant’s conduct constituted an impermissible “dilatory tactic” designed to “delay th[e] trial,” “manipulate the court’s calendar,” and “manipulate the representation” defendant received. The court further warned defendant to stop “playing games . . . with the Court.” The matter was then adjourned several times for assignment of new counsel.
On July 16, 2007, John Broderick, Esq. appeared on defendant’s behalf as his newly assigned counsel. The court apprised Mr. Broderick of the history of the prior proceedings and adjourned the case for defense counsel to familiarize himself with the case. The court then warned defendant that should he “sabotage this relationship with new counsel,” as he sabotaged his relationship with Ms. Aumand, the court would effectively “deem” that conduct to be “a waiver of [defendant’s] right to counsel.” The court further specifically advised defendant that should he “file a [law] suit against his new counsel,” the court would relieve the attorney and new counsel would not be appointed.
*567 On September 6, 2007, Mr. Broderick moved to be relieved from representing defendant because (a) defendant claimed to have retained another named lawyer who did not appear in court, and (b) defendant refused to “cooperate” in his defense. Mr. Broderick explained:
“Mr. Best is a very independent minded man. He goes his own way when you are defending him .... It’s difficult to deal with him because he insists on going his own way. He wants me to file motions [to] dismiss the complaint and to submit motions that have already been decided on by the Court. He insists on saying that I am not protecting his legal rights when I don’t do things like that. There was an investigator appointed to investigate the case. I told the investigator to take pictures, but my client, he won’t let them do the investigation. I am not going to let them take photographs, he said. I say yes. He says no. . . . He’s an independent fellow. I am not saying that he’s trying to sabotage anything. He’s just an independent fellow. . . . It’s very difficult to deal with an independent minded person. . . . [H]e also gives mild irritating slurs. For example, in talking to him yesterday he says, he tells me I am sort of green in my choices. He says I have been coming here doing this for thirty-seven years, and all I care about is getting the plea. He indicated that more than once that I am not protecting his rights. I don’t need the professional insults. . . . He’s so difficult to cooperate with that I can’t effectively represent him.”
The court denied the motion to be relieved, asserting that any “difficulties” which may arise in the attorney-client relationship would work to defendant’s “detriment,” based upon the “choices he makes.” The court then adjourned the cases to September 14 for completion of discovery and trial. Because the discovery issues were still unresolved on September 14, the court adjourned the case to September 21 for trial.
On September 21, 2007, the court resolved the remaining discovery issues in a written decision and was about to have the clerk call for the jury panel, when defense counsel apprised the court that defendant was interested in the proposed disposition offered by the People. Defendant then pleaded guilty to two counts of violating Penal Law § 130.55, sexual abuse in the third degree, and was sentenced.
*568 The parties agreed to hold the requisite SORA hearing on September 24, 2007, but on that date defendant requested an adjournment. The hearing was adjourned to October 26, 2007. On that date, the court received a letter from Mr. Broderick, apprising the court that Mr. Broderick was undergoing heart surgery and would not be available for an extended period. Given his condition and the uncertainty of his return, Mr. Broderick asked that the court relieve him and assign a new attorney to represent defendant. The court then assigned Michael L. Cserhalmi, Esq. as defendant’s new attorney, and the matter was adjourned several more times for the SORA hearing. Defense Counsel’s Current Motion to be Relieved and Defendant’s Motion for Assignment of New Counsel
In a November 7, 2007 letter addressed to the court, Mr. Cserhalmi advised the court that he was requesting that he be relieved from representing defendant because of “severe disagreements” between him and defendant. On December 10, 2007, the court denied the motion to be relieved because the motion lack specificity.
In a motion dated January 1, 2008, Mr. Cserhalmi again moved to be relieved upon the ground that, inter alia, defendant “threatened” to file a “grievance” against counsel if counsel did not file motions which counsel deemed frivolous.[2] In a reply affidavit, defendant joined in counsel’s motion and did not deny having informed counsel that he would file a complaint with the Grievance Committee should counsel fail to file motions proposed by defendant.
On January 8, 2008, the court heard argument on counsel’s motion to be relieved. Defense counsel contended that he no longer was able to represent defendant in these matters because defendant had threatened to file various baseless, contrived complaints against counsel with the Grievance Committee and *569 communication between defense counsel and defendant had completely and irretrievably broken down. Defense counsel also claimed that defendant continued to insist that counsel is “part of [a] conspiracy to deprive him of his rights.” Counsel further asserted that he refused to speak to defendant any further without a third-party witness present because defendant had repeatedly mischaracterized, or otherwise twisted, counsel’s statements.
Although defendant, in his written reply, joined in defense counsel’s motion to relieve counsel, at oral argument defendant objected to the court relieving counsel, contending that counsel has failed to present to the court “a basis for being relieved.” Defendant did, however, admit that he informed defense counsel that he intended to file a complaint against defense counsel with the Grievance Committee. Further, when it became clear to defendant that the court was inclined to grant defense counsel’s motion to be relieved and continue the hearing with defendant proceeding pro se, defendant requested that the court assign new counsel for the SORA hearing.
The People did not take a firm position on defense counsel’s motion to be relieved but reminded the court that defendant had been represented by at least five attorneys and had proceeded pro se several times. The People argued that defendant had been engaging in “nothing but dilatory tactics” and urged the court to refrain from delaying the SORA hearing once again.
The court orally granted defense counsel’s motion to be relieved and denied defendant’s motion for assignment of new counsel, finding that “defendant has engaged in repeated manipulation and dilatory tactics and has . . . purposely sought out to sabotage his relationship . . . . [n]ot only with this attorney but [with] all of the attorneys who have represented him.” This, the court found, was defendant’s well-established “modus operandi” — which was precisely the reason that the court had previously warned defendant that such conduct would be deemed a “waiver or forfeiture of his right to counsel.” Accordingly, this court concluded, over defendant’s objection, that defendant, by his conduct throughout the proceedings, had effectively forfeited his right to counsel and was required to proceed pro se. Although this court recognized that such a ruling was somewhat rare and “unusual,” the court indicated that the ruling was warranted given all of the circumstances surrounding the proceedings.
*570 Discussion
A criminal defendant’s right to the assistance of counsel “is fundamental to our system of justice” (People v Arroyo, 98 NY2d 101, 103 [2002]), and is absolutely guaranteed by the Federal and State Constitutions. (US Const 6th, 14th Amends; NY Const, art I, § 6; see Gideon v Wainwright, 372 US 335 [1963]; People v Koch, 299 NY 378, 381 [1949].)
As cherished and fundamental as the right to counsel is, however, the right may be “disavowed]” or waived by a defendant who wishes to “[forgo] the advantages of counsel and represent [him]self” (People v Arroyo, 98 NY2d 101, 103 [2002]; People v McIntyre, 36 NY2d 10, 14 [1974]; Faretta v California, 422 US 806 [1975]). This right of self-representation, although “inherently antagonistic” to the right to counsel, “embodies one of the most cherished ideals of our culture; the right of an individual to determine his own destiny” (People v McIntyre, 36 NY2d at 14), and the right of the “criminal defendant. . . to be master of his own fate” (People v Vivenzio, 62 NY2d 775, 776 [1984]).
As such, a criminal defendant’s “choice” to proceed pro se “must be honored” (Faretta v California, 422 US 806, 834 [1975]), as long as the court is satisfied, following a “searching inquiry” (People v Slaughter, 78 NY2d 485, 491 [1991]), that defendant is competent to represent himself, is aware of the dangers and disadvantages of self-representation and is apprised “of the singular importance of the lawyer in the adversarial system of adjudication” (People v Smith, 92 NY2d 516, 520 [1998]). The court must be satisfied, in short, that defendant’s waiver of the right to counsel is knowing, intelligent and voluntary. (See People v Providence, 2 NY3d 579 [2004]; People v Arroyo, 98 NY2d 101 [2002]; People v Smith, 92 NY2d 516 [1998]; People v Sawyer, 57 NY2d 12 [1982].)
Waiver of the fundamental right to counsel aside, a criminal defendant may also “determine his own destiny” (People v McIntyre, 36 NY2d at 14), and act as the “master of his own fate” (People v Vivenzio, 62 NY2d at 776), by effectively forfeiting his right to counsel. Although the Court of Appeals has not squarely addressed the question of whether a defendant may, by his conduct, forfeit his right to counsel, the Court in dicta did recognize that in “extreme, last-resort” situations “egregious conduct by defendants can lead to a deemed forfeiture of the fundamental right to counsel.” (People v Smith, 92 NY2d at *571 521;[3] see also United States v McLeod, 53 F3d 322, 325-326 [11th Cir 1995] [“under certain circumstances, a defendant who is abusive toward his attorney may forfeit his right to counsel”].)
The Court’s dicta in People v Smith (92 NY2d at 521) is followed by an approving cite to People v Gilchrist (239 AD2d 306 [1st Dept 1997], Iv denied 91 NY2d 834 [1997]). In People v Gilchrist (239 AD2d at 307), the Appellate Division held that the trial court “properly found that, by brutally assaulting his attorney, the fourth one appointed by the court, on the original sentencing date, defendant forfeited his right to counsel.” Although Gilchrist involved a physical assault upon an attorney, other courts have found that a criminal defendant may be deemed to have forfeited his right to counsel in a variety of circumstances, short of a physical assault.
In United States v McLeod (53 F3d at 325), for example, the 11th Circuit found that defendant forfeited his right to counsel because he “threatened ... to sue” counsel and “threatened to harm him.” Likewise, in People v Lineberger (282 AD2d 369, 370 [1st Dept 2001], affd 98 NY2d 662 [2002]), the Appellate Division held that defendant forfeited his right to counsel “[b]ecause defendant unjustifiably refused the services of, refused to cooperate with, and engaged in abusive conduct toward his competent appointed counsel, the third one appointed by the court.”[4] Similarly, in People v Sloane (262 AD2d 431, 432 [2d Dept 1999], Iv denied 93 NY2d 1027 [1999]), the Appellate Division held that defendant “forfeited his right to counsel by his persistent pattern of threatening, abusive, obstreperous, and uncooperative behavior with successive assigned counsel.” (See also People v Wilkerson, 294 AD2d 298, 298 [1st Dept 2002] [defendant forfeited his right to counsel “by spitting at and threatening his last attorney, after threatening prior attorneys and having attacked one of them, all with the apparent motive of manipulating the court into providing him with yet a sixth attorney on the eve of the suppression hearing”], Iv denied 98 NY2d 772 [2002]; People v Fulton, 2002 NY Slip Op 40014[U] [Sup Ct, Monroe County 2002] [defendant forfeited his right to assigned counsel where defendant was uncooperative with, and *572 acted belligerently toward, his three assigned attorneys and filed a complaint against his third assigned counsel with the Grievance Committee]; People v McElveen, 234 AD2d 228, 231 [1st Dept 1996] [defendant’s “failure to cooperate with so many appointed attorneys during the course of these proceedings constitutes the effective waiver of the right to counsel”].)
Here, the court finds that defendant forfeited his right to counsel based upon (a) defendant’s repeated efforts to sabotage his relationships with each of the five attorneys who represented him (Glover, Esq., Ramsey, Esq., Aumand, Esq., Broderick, Esq. and Cserhalmi, Esq.), efforts which continued even after the court warned defendant that his conduct would be deemed to be a forfeiture and a waiver of his right to counsel; (b) defendant’s filing of a lawsuit against his third assigned attorney (Aumand) after his efforts to get that attorney relieved failed; (c) defendant’s threat to file a complaint with the Grievance Committee against his fifth assigned attorney (Cserhalmi); and (d) defendant’s repeated manipulation and use of his right of self-representation and his right to assigned counsel as a dilatory tactic designed to delay the prosecution of these matters and to disrupt the orderly administration of justice.
Significantly, defendant’s uncooperative conduct and efforts to sabotage his attorney-client relationships began even before the ink had a chance to dry on the court’s first order, assigning attorney Glover to represent defendant at his arraignment. And defendant was relentless thereafter, moving as he did to have the court discharge every single attorney who was assigned to represent him, including the attorney (Ramsey) whom defendant retained briefly while attorney Glover was still representing him. Although it is true that defendant did not affirmatively move to discharge Broderick, Esq. (defendant’s fourth attorney), defendant clearly drove Broderick to make that motion himself based upon defendant’s uncooperative conduct, verbal abuse and “irritating slurs.” Further, when the court denied defendant’s motions to discharge his attorneys because the motions were not supported by good cause, defendant pursued other tactics to ensure that the attorneys would be relieved — such as briefly retaining attorney Ramsey so that Glover would be discharged; asserting his right to self-representation so that Ramsey would be discharged; filing a lawsuit against Aumand so that Aumand would be discharged; and threatening to file a grievance against Cserhalmi with the Grievance Committee on the eve of a SORA hearing so that Cserhalmi would be dis *573 charged — notwithstanding the court’s strong warning that such conduct would be deemed to be a forfeiture or waiver of this right to counsel.
This consistent pattern of conduct by defendant, designed to sabotage the attorney-client relationship, has been defendant’s well-established “modus operandi” during these proceedings, as this court specifically declared during oral argument on the motion. By his actions throughout these proceedings, defendant has made one point crystal clear: namely, that no attorney — no matter how experienced, no matter how smart, no matter how eloquent, no matter how diligent — would be good enough for defendant. And yet the court consistently found that each of defendant’s attorneys provided effective assistance of counsel and that defendant’s complaints against each of them were meritless at best and frivolous at worst.
Considering the totality of defendant’s conduct throughout the proceedings in these matters, the court finds that defendant, by his pervasive conduct, has effectively forfeited his right to counsel and is required to proceed pro se during the SORA hearing. Defendant’s conduct is substantially similar to the conduct of the defendants in those cases where the trial court’s finding of forfeiture was upheld on appeal. (See United States v McLeod, 53 F3d at 325-326; People v Lineberger, 282 AD2d at 370; People v Sloane, 262 AD2d at 432; see also People v Fulton, 2002 NY Slip Op 40014[U] [2002]; People v McElveen, 234 AD2d at 231 [defendant, by his conduct, “waived” his right to counsel].)
The court’s finding of forfeiture here is particularly supported by the Second Department’s decision in People v Sloane (262 AD2d at 432). In Sloane, the trial court not only made a finding that defendant had forfeited his right to counsel by his conduct, but also had found, following a searching inquiry, that defendant was competent to proceed pro se and that “defendant had knowingly waived his right to counsel, with a full understanding of the dangers and disadvantages of proceeding pro se.” (Id.) Like the Court in Sloane, this court had determined, prior to its forfeiture finding, that the defendant, having been advised of the risks of proceeding pro se and of the advantages of being represented by counsel, was intelligently and knowingly waiving his right to counsel.
Notably, although the courts in the aforementioned cases have not imposed the requirement of a prior warning to defendant as a prerequisite to a finding of forfeiture, such a warning was *574 carefully provided to defendant by the court here after defendant filed a lawsuit against his third attorney, Ms. Aumand. The court specifically warned defendant that should he “sabotage this relationship with new counsel,” as he sabotaged his relationship with Ms. Aumand, the court would relieve the attorney and new counsel would not be appointed. Defendant failed to heed the court’s warning, as he promptly proceeded to engage in abusive and uncooperative behavior with attorneys Broderick and Cserhalmi, and then threatened to file a frivolous complaint[5] with the Grievance Committee against attorney Cserhalmi.
Under these circumstances, defendant clearly sought to “determine his own destiny” (People v McIntyre, 36 NY2d at 14), and serve as the “master of his own fate” (People v Vivenzio, 62 NY2d at 776), by effectively forfeiting his right to counsel. As Justice Silverman asserted in a different context, “There comes a point where a defendant must bear the consequences of his conduct, in a courtroom as well as out of it.” (People v Kelly, 60 AD2d 220, 224 [1977], affd, on op of Silver-man, J., 44 NY2d 725 [1978].) That time has now come for this defendant.
The court recognizes that forfeiture of the right to counsel — an “extreme, last-resort” circumstance (People v Smith, 92 NY2d at 521) — would ordinarily not be warranted where a defendant, by a single act, files a lawsuit or a complaint against his attorney. Certainly a criminal defendant has the right to take such action when he has good faith reasons to believe that his rights have been violated. Nor does a criminal defendant give up such rights merely because he accepts assignment of an attorney in a criminal proceeding. Here, the court finds that defendant forfeited his right to counsel not because of any single act committed by defendant. Instead, the court finds that defendant forfeited his right to counsel because of the cumulative nature of his acts — the pervasive pattern of his numerous acts— considered collectively over a 17-month period.
Furthermore, it is important to note that defendant’s pattern of conduct was not only designed to sabotage the attorney-client relationship. It was also designed to delay the prosecution of this matter and obstruct the orderly administration of justice. It is no coincidence, for example, that each of defendant’s applica *575 tions for assignment of new counsel or for permission to proceed pro se, as well as each of defendant’s hollow representations that he had retained new counsel (who never appeared), was preceded by an application for an adjournment and occurred on the eve of, or in the middle of, some substantive hearing which was scheduled. Nor is it a coincidence that each of defendant’s applications was preceded by, or followed by, defendant’s constant interruptions of the court and other parties, defendant’s inflammatory comments and defendant’s other obstreperous conduct.
As the Court of Appeals asserted in People v Sides (75 NY2d 822, 824 [1990]), “[t]he right of an indigent criminal defendant to the services of a court-appointed lawyer does not encompass a right to appointment of successive lawyers at defendant’s option . . . [and] may not be used merely to delay the orderly administration of justice.” Furthermore, just as the right to counsel “may not be put to service as a means of delaying or trifling with the court” (United States v Fowler, 605 F2d 181, 183 [5th Cir 1979]), the right of self-representation “is not a license to abuse the dignity of the courtroom” (Faretta v California, 422 US at 834 n 46; see also United States v Tompkins, 623 F2d 824, 827-828 [2d Cir 1980] [courts addressing right-to-self-representation and right-to-counsel claims should consider whether defendant was engaging in a “deliberate plot to manipulate the court by alternately requesting, then waiving counsel”]; Williams v Bartlett, 44 F3d 95, 101 [2d Cir 1994] [“Of course, when a defendant changes his mind (regarding self-representation and the assignment of counsel) after trial begins, or does so repeatedly at any stage, a court may find that the conduct is manipulative or abusive in some other way”]; People v Gaines, 212 AD2d 727, 728 [2d Dept 1995] [defendant’s request for appointment of new counsel “moments before the commencement of the voir dire of the jury, was clearly a delaying tactic”]; People v McElveen, 234 AD2d at 231-232 [defendant’s “concerted efforts to make a mockery of the judicial process” should not be rewarded; “(b)y his obstreperous behavior, defendant has attempted to manipulate the system to his advantage”]; People v Erber, 210 AD2d 250, 251 [2d Dept 1994] [“considering the defendant’s previous assurances that he would retain private counsel, and his failure to do so, the court reasonably concluded that the defendant’s motion on the eve of trial for assignment of new counsel was a dilatory tactic”]).
Here, although the court repeatedly found that defendant was employing “dilatory tactics” designed to “delay th[e] trial,” and *576 warned defendant to stop “playing games . . . with the Court” and to refrain from ‘‘manipulating] the Court’s calendar,” defendant remained bent upon delaying the proceedings at virtually every turn. Just as it was defendant’s modus operandi to sabotage the attorney-client relationship, it was also defendant’s modus operandi to disrupt the orderly administration of justice and employ dilatory tactics to unduly delay the proceedings. This court cannot permit such conduct to continue.
Throughout these proceedings, this court, attempting to exercise “a strong measure of patience” (United States v Tompkins, 623 F2d at 827), has arduously and painstakingly sought to honor and protect defendant’s right to self-representation and his right to counsel. With equal vigor, this court also has sought to honor and protect “the dignity of the courtroom” (Faretta v California, 422 US at 834 n 46), and “the integrity of the criminal process” (People v Tineo, 64 NY2d 531, 537 [1985]), particularly since it is evident to the court that a plan was afoot “to make a mockery of the judicial process” (People v McElveen, 234 AD2d at 231).
This court also has been cognizant, throughout these proceedings, of its concomitant “duty to protect” “the officers of the court” — the attorneys who appear before the court on behalf of the defendant. (Matter of Legal Aid Socy. of City of N.Y. v Roth-way, 69 AD2d 801, 801 [1st Dept 1979].) That duty requires the court to “embrace[ ] the obligation not to subject counsel to unnecessary personal risk” (id.) in their assignments to represent indigent criminal defendants, including the personal risk of verbal abuse, the personal risk of antagonistic professional slurs, and the personal risk of being dragged into court or before a grievance committee based upon frivolous, self-serving complaints. Those who choose to accept the tough job of representing criminal defendants should not thereby become the victims of those whose rights they seek to protect.
In conclusion, the motion to be relieved is granted and the motion for assignment of new counsel is denied. Defendant is required to proceed pro se at the SORA hearing.

. On February 15, 2007, the People offered to enter into a stipulation with defendant, pursuant to which the People would return to defendant the property recovered as a result of the search warrant. Defendant declined to enter into such a stipulation.

. Specifically, defendant urged Cserhalmi to file a motion to vacate defendant’s guilty plea on the ground that defendant claimed that his plea was based upon a quid pro quo — an alleged agreement that he would plead guilty upon the condition that the People would return the computers which the police recovered from his home pursuant to a search warrant. During oral argument on the motion to be relieved, however, defendant acknowledged that in the minutes of the plea the People specifically indicated that although they would be happy to sign a release for the return of the computers, the release of the property would not be a “term” of the plea. Further, when the defendant, several days after his plea, suggested that he may want to move to vacate his plea, the court offered to vacate the plea and commence a trial right away. Defendant then indicated, however, that he was not sure he wanted to vacate his plea.

. The Court of Appeals in Smith did not squarely address the forfeiture issue because the trial court decided the right to counsel issue on “waiver” (not forfeiture) grounds and the forfeiture issue was not properly preserved. (People v Smith, 92 NY2d at 521.)

. Although the Court of Appeals in People v Lineberger (98 NY2d at 663) affirmed the Appellate Division order, it did so upon waiver, not forfeiture, grounds.

. The frivolous nature of defendant’s proposed motion to vacate the plea is discussed in footnote 2, supra.