# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 58
The People &c.,
        Respondent,
    v.
Bradford L. Shanks,
        Appellant.

Kathy Manley, for appellant.
James Di Donna, for respondent.
Center for Appellate Litigation, et al., amici curiae.

FAHEY, J.:

The right to be represented by counsel, guaranteed by the Sixth Amendment to the United States Constitution, is deeply intertwined with the integrity of the process of criminal prosecution. It is an essential constitutional right; without it all other constitutional trial rights are threatened.

- 1 -

> "[R]eason and reflection require us to recognize that in our adversary system of criminal justice, any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for [that person]. This seems to us to be an obvious truth." (*Gideon v Wainwright*, 372 US 335, 344 [1963].)

Only in rare circumstances may a defendant be deemed to have forfeited the right to counsel. On the record before us, we conclude that defendant neither forfeited his right to counsel nor validly waived his right to appeal.

I.

Defendant Bradford Shanks, accused of wrongfully obtaining insurance payments, was charged by indictment with grand larceny in the third degree. The prosecutor's theory was that defendant, seeking to receive lost wage compensation after an accident, submitted a tax return to his insurance carrier that he had not filed with the Internal Revenue Service, showing past income he had not received.

On June 25, 2015, defendant appeared in Otsego County Court. Defendant wished to retain counsel and the matter was adjourned for him to do so. The prosecutor, citing defendant's failure to appear in court in prior criminal matters, requested that bail be set. County Court agreed and remanded defendant. A few days later, defendant made bail and was released. On July 10, County Court increased defendant's bail and again remanded him, after defendant arrived 45 minutes late for an appearance that morning. Defendant requested an "afternoon appointment" in the future, and County Court responded that the court did not "cut hair or clean teeth." Defendant posted the increased bail a few days later and was released.

On September 25, defendant appeared in County Court, accompanied by his attorney, Assistant Public Defender Ryan Miosek, who entered a plea of not guilty on defendant's behalf. The Public Defender's Office had written to alert the court of a conflict of interest, in that the office had previously represented defendant's wife, who was a potential prosecution witness in defendant's case. Citing that conflict, County Court relieved Miosek and the entire Public Defender's Office from representing defendant. The court placed on the record no other ground for relieving Miosek.

For several months, defendant was represented by attorney David K. Taylor, who, among other things, filed an omnibus motion to dismiss on defendant's behalf. After County Court denied that motion, Taylor filed a motion requesting that the County Court Judge recuse himself. Taylor alluded to the July 10, 2015 appearance at which County Court had responded with "an atypically sarcastic response" to defendant's request for "afternoon appointment[s]." Taylor also alleged that during an unrecorded conference on December 2, 2015, "the district attorney . . . announc[ed] that he was going to move to dismiss the case," but "[i]n response, the judge expounded on the number of ways he could see that the case could still successfully be prosecuted" and the following day "the People announced they had decided to go forward." County Court denied the recusal motion.

Taylor sought to withdraw from representing defendant due to an illness, for which the attorney was hospitalized from March 6 through March 16, 2016. On March 21, Taylor wrote to County Court, requesting that all of his pending assigned cases be reassigned to other counsel due to his inability to work during convalescence.

County Court relieved Taylor on April 1, and appointed Lauren Cady Carlson to represent defendant. The record reveals that the court relieved Carlson on April 13, "[u]pon being notified that the assigned attorney [could not] accept the assignment based upon a conflict." A subsequently assigned counsel, Joseph Scott, informed County Court that he could not represent defendant because he was leaving New York and would no longer be practicing law in the state.

County Court relieved Scott on June 16, and appointed Diane DiStefano as defendant's attorney. On August 3, DiStefano requested by letter that she be relieved. The attorney described a telephone conversation in which defendant had "holler[ed] at" her and other conversations with him that "did not go well." DiStefano insisted that she could not "communicate with [defendant]" or "even discuss the case with him, let alone prepare him for trial," while she also emphasized that defendant would "not entertain any type of offer to settle." She posited "a complete and total breakdown of the attorney/client relationship."

During an August 5 appearance, County Court confirmed with DiStefano that she thought there was an irretrievable breakdown. After defendant indicated that he agreed with "[p]art of" that assessment and that he did not think he could continue to work with DiStefano as his attorney, counsel was relieved. County Court accused defendant of "be[ing] abusive to [his] attorneys" and "purposely or inadvertently" causing delays in the proceedings. For his part, defendant denied that he had been rude or belligerent to DiStefano. He also reminded the court that Taylor had been relieved because of illness and insisted that there had been no animosity between them. Although the court told defendant that DiStefano was the third attorney who had asked to be relieved because of

defendant's behavior, the record reflects that Miosek and Carlson were relieved due to conflicts of interest, Scott because he was leaving New York, and Taylor because of his illness.

On September 23, County Court appointed Lee C. Hartjen, to represent defendant. In October, Hartjen filed a new motion to dismiss, which County Court denied. By letter dated January 4, 2017, Hartjen sought permission to be relieved based on defendant's behavior and unwillingness to prepare for trial. In an appearance on January 13, Hartjen explained that, although he and defendant "g[o]t along okay," defendant expected his case to be successfully resolved by a motion to dismiss, and had been uncooperative with respect to trial preparation. Hartjen added that defendant had become agitated with staff and had accused Hartjen of incompetence and malpractice. Defendant agreed with Hartjen's request to be relieved. County Court relieved Hartjen and refused to assign another attorney to represent defendant. Instead, a week later, the court assigned Dennis B. Laughlin as defendant's "legal advisor" or standby counsel.

Forced to represent himself, defendant told County Court that he was "not capable of defending [him]self in this case." County Court informed defendant that matters had "c[o]me to this point" after attorneys had advised the court that they could not represent defendant "because [he] told them how [he] wanted [his] defense to be presented" and yet defendant had not changed his behavior. The court warned defendant that, if he told the jury that he desired an attorney, the court would be "forced to explain to the jury exactly why [defendant did not] have one," which could be prejudicial to defendant.

Defendant declined to question prospective jurors, and informed them that he was "definitely not qualified to try this case." Such remarks prompted the promised curative instruction from County Court, which described defendant as uncooperative and "unwilling[] to assist in his defense."

The jury found defendant guilty as charged. County Court remanded defendant without bail, contrary to the recommendation of the prosecutor.

A new attorney retained by defendant filed a second motion for the County Court Judge's recusal, alleging bias by the court, and a motion to set aside the verdict pursuant to CPL 330.30, which included an argument based on alleged violation of defendant's right to counsel.

At sentencing on April 21, 2017, the People indicated that if defendant would withdraw the motions, which had not yet been decided, they would recommend a sentence of time served. Defendant discussed the proposed agreement with his attorney. County Court explained that defendant "would be withdrawing [the] motions in their entirety," and would be giving up "the right to appeal any issue relating to [his] conviction and ultimately [his] sentence." Defendant replied that he understood.

County Court described the right to appeal that defendant would purportedly waive as follows.

> "[Y]our right to appeal is your right after today's proceedings to . . . challeng[e] them with . . . a higher court. . . . It's your right to claim that errors were made either by the Court, the District Attorney, the police officers, whoever it may be, to claim that somehow your rights were violated and to ask . . . a higher court to review this case with your request that your conviction be vacated or your sentence be changed.

> "The District Attorney had indicated he's willing to go along with this proposal in part to put finality to this matter, to not go through any of that process. So he's making a condition of his consent, [that] you're agreeing that this will close out the matter. You're agreeing to waive your right to appeal your conviction and sentence."

In language that would be appropriate in the more usual setting of a plea agreement avoiding trial, County Court added that the appeal waiver was "separate and distinct and apart from any trial rights [defendant] may have." Again defendant said that he understood.

Defendant also signed a written waiver of the right to appeal, in which he "waive[d] any and all rights to appeal from the judgment of conviction and sentence." The appeal waiver stated that defendant had "been advised of the right to take an appeal (CPL 450.10), to prosecute the appeal as a poor person, and to have an attorney assigned . . ., and to submit a brief, and/or argue before the appellate court on any issues relating to the conviction or sentence." However, the appeal waiver did not clarify that these were rights defendant would to a certain extent retain, as opposed to rights he had waived. Indeed, the written waiver stated that defendant had "waive[d] [his] rights to appeal voluntarily and knowingly after being fully apprised of [these] appellate rights." The appeal waiver also stated that it was executed "in consideration of and as part of the plea agreement being entered into," even though defendant had not pleaded guilty.

County Court sentenced defendant to time served.

On appeal, defendant contended, as a threshold matter, that the appeal waiver was invalid and, alternatively, that his claim that his Sixth Amendment right to counsel had been violated survived a valid waiver. Defendant then argued, among other things, that

County Court had violated his constitutional right to counsel by requiring him to represent himself at trial, that he had not forfeited his right to counsel, that the curative instruction concerning his refusal to cooperate with counsel constituted reversible error, and that County Court was impermissibly biased.

In a decision that predated our opinion on appeal waivers in *People v Thomas* (34 NY3d 545 [2019]; *see also People v Bisono*, 36 NY3d 1013 [2020]), the Appellate Division ruled that defendant's appeal waiver was valid and affirmed the judgment (174 AD3d 1142, 1142-1143 [3d Dept 2019]). The Appellate Division assumed, without deciding, that defendant's constitutional right to counsel argument survived his appeal waiver, but held that defendant had, by his behavior with successive assigned counsel, forfeited his right to counsel (*see id.* at 1143). The court did not reach defendant's remaining contentions, treating them as precluded by his appeal waiver (*see id.*).

A Judge of this Court granted defendant leave to appeal and we now reverse.

II.

We first consider whether defendant's appeal waiver was valid. In *People v Thomas*, we resolved three consolidated appeals, in which the defendants' waivers of the right to appeal contained mischaracterizations of the scope of the appellate rights each defendant had purportedly waived as a condition of their plea bargain. The Court reinforced the principle that "a waiver of the right to appeal is not an absolute bar to the taking of a first-tier direct appeal" (*Thomas*, 34 NY3d at 558, citing *People v Seaberg*, 74 NY2d 1, 11 [1989], *People v Callahan*, 80 NY2d 273, 280 [1992], *People v Hansen*, 95 NY2d 227, 230-231 [2000]; *accord Garza v Idaho*, ___US___ , 139 S Ct 738, 744-745

[2019]). "[A]ppellate review is not waivable, despite a guilty plea, for issues involving jurisdictional matters or 'rights of a constitutional dimension that go to the very heart of the process' " of criminal prosecution (*Thomas*, 34 NY3d at 559, n 2, quoting *Hansen*, 95 NY2d at 230).

In two of the consolidated appeals, *Green* and *Lang*, we invalidated appeal waivers because in each case the County Court had mischaracterized the appellate rights waived as encompassing an absolute bar to a direct appeal and collateral relief, as well as loss of attendant rights to counsel and poor person relief (*see Thomas*, 34 NY3d at 565-566). For example, the written appeal waiver forms signed by Green and her attorneys stated that the defendant was waiving "all rights to appeal," including her rights to take an appeal, file a brief, have counsel appointed if she could not afford one, argue the appeal before an appellate court, and seek CPL article 440 relief to vacate the conviction or sentence (*see id.* at 554). Given the mischaracterizations of the appellate rights waived, we could not be certain that the defendants understood the nature of the waivers and therefore determined that the appeal waivers were involuntarily made and not enforceable (*see id.* at 565-566).

On the other hand, in the *Thomas* appeal, we upheld an appeal waiver, despite some imprecise, misleading language in the waiver suggesting a bar to all appellate rights, because it also contained "clarifying language in the same form that appellate review remained available for certain issues, . . . indicating, therefore, that the right to take an appeal was retained" (*id.* at 564). The written waiver form that Thomas and his attorney signed, after consultation, stated, incorrectly, that Thomas "waive[d] any and all rights to appeal including the right to file a notice of appeal from the judgment of conviction," yet

expressly excepted any constitutional speedy trial claim as well as challenges to the legality of sentence, competency to stand trial, and "the voluntariness of this plea and [appeal] waiver" (*id.* at 553). The appeal waiver was enforceable because "the totality of the circumstances reveals that the defendant understood the nature of the appellate rights being waived" (*id.* at 559).

Unlike Thomas's appeal waiver, and akin to those in *Green* and *Lang*, defendant's waiver in the case before us did not contain "clarifying language . . . that appellate review remained available for certain issues" (*id.* at 564). Indeed, the written appeal waiver and the colloquy utterly failed to indicate that some rights to appeal would survive the waiver. Moreover, the written waiver implied that defendant was completely waiving his right "to prosecute [an] appeal as a poor person, and to have an attorney assigned" if indigent.[1]

Defendant's appeal waiver thus mischaracterized the nature of the waiver of appeal by suggesting that the waiver included an absolute bar to the taking of a first-tier direct appeal and the loss of attendant rights to counsel and poor person relief (*see Bisono*, 36 NY3d at 1017-1018; *see generally People v Grimes*, 32 NY3d 302, 311-312 [2018]). Under the circumstances we cannot be certain that defendant understood the nature of the appeal waiver, and therefore the appeal waiver is not enforceable (*see Thomas*, 34 NY3d at 565-566).

---

[1] It is true that County Court belatedly told defendant that if he still wished to appeal, then he had 30 days to do so and his attorney would help him "with that paperwork," or alternatively County Court would assign an attorney to file the notice of appeal. However, these instructions to defendant were given only *after* defendant had executed the deficient appeal waiver.

Our conclusion that defendant's appeal waiver is invalid obviates the need to decide whether a valid appeal waiver would have extinguished defendant's claim that his right to counsel was violated at trial. We take no position on that question and proceed to consider whether, on the record before us, defendant forfeited his right to counsel.

III.

We have recognized that "egregious conduct by [a] defendant[] can lead to a deemed forfeiture of the fundamental right to counsel," but only as a matter of "extreme, last-resort . . . analysis" (*People v Smith*, 92 NY2d 516, 521 [1998]). The record here falls short of establishing "egregious conduct" by defendant.

This Court has not addressed the level of misconduct by a defendant that warrants the drastic measure of forfeiture of the right to counsel, but forfeiture has been upheld by intermediate appellate courts where the record demonstrated physically abusive and threatening acts by the defendants towards their counsel. For example, "by brutally assaulting his attorney, the fourth one appointed by the court, . . . [the] defendant forfeited his right to counsel" in *People v Gilchrist* (239 AD2d 306, 307 [1st Dept 1997], *lv denied* 91 NY2d 834 [1997]). Similarly, in *People v Wilkerson* (294 AD2d 298, 298 [1st Dept 2002], *lv denied* 98 NY2d 772 [2002]), the defendant forfeited his right to counsel "by spitting at and threatening his last attorney, after threatening prior attorneys and having attacked one of them."

There can also be forfeiture of the right to counsel without assault or other physical aggression. Threatening or verbally abusive conduct may be sufficient. A defendant may forfeit the right to counsel because of a "persistent course of egregious conduct toward

successive assigned counsel, consisting of threats and other abusive behavior" (*People v Cooper*, 128 AD3d 1431, 1433 [4th Dept 2015], *lv denied* 26 NY3d 966 [2015]); *see also e.g. People v Sloane*, 262 AD2d 431, 432 [2d Dept 1999], *lv denied* 93 NY2d 1027 [1999]).

On the other hand, mere raised voices, vociferous disagreement with an attorney over strategy, or accusations of incompetence do not rise to the level of egregious conduct constituting forfeiture of the right to counsel, especially when the defendant himself does not seek to dismiss the attorney (*compare People v McElveen*, 234 AD2d 228, 230 [1st Dept 1996], *lv denied* 89 NY2d 1097 [1997]). A defendant does not forfeit the right to counsel simply by being argumentative or uncooperative with counsel or by moving to reassign counsel "as a mere dilatory tactic" (*People v Issac*, 121 AD3d 816, 817-818 [2d Dept 2014], *lv denied* 24 NY3d 1220 [2015]). The right to counsel would be almost meaningless if every defendant who quarreled with their attorney about their defense or attempted to delay the proceedings forfeited the right to counsel.

There may be circumstances where a defendant who refuses to cooperate with successive assigned attorneys is ultimately deemed to have forfeited the right to assigned counsel, although such an individual must be afforded the opportunity to retain counsel. The record on appeal, however, does not permit the conclusion that this is such a case. There is record evidence of only two attorneys who asked to be relieved due to difficulties with defendant. Those were DiStefano and Hartjen, who complained of defendant's raised voice and lack of cooperation, but provided no evidence of threats or other abusive conduct. County Court's own orders relieving Miosek, Taylor, Carlson, and Scott cited conflict of

interest, illness, or departure from the state, not attorney-client animosity. Such factors were beyond defendant's control.

We conclude that there is no support in the record for the lower courts' determination that defendant's conduct with successive assigned counsel was so egregious as to constitute forfeiture of the right to counsel.

IV.

"That is the wonder of the law: that it moves case by case, seeking justice for each individual, but that any single case may be part of some larger movement" (Anthony Lewis, Gideon's Trumpet 219 [1989] [first published 1964]). Defendant was forced to undergo a criminal trial without counsel (*see generally People v Silburn*, 31 NY3d 144, 152 [2018] [noting that a standby or advisory counsel is not a cocounsel]). The law of criminal procedure has left a process like this far behind. The proper remedy is a new trial.

In light of our holdings, there is no need for us to reach any issue related to defendant's allegations of judicial bias.

Accordingly, the order of the Appellate Division should be reversed and a new trial ordered.

Order reversed and a new trial ordered. Opinion by Judge Fahey. Chief Judge DiFiore and Judges Rivera, Garcia, Wilson, Singas and Cannataro concur.

Decided October 12, 2021